# No. 26-901

EXCERPTS OF RECORD

# No. [9th Cir. No. TBD]

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

ROBERT EMERT,

Plaintiff-Appellant,

v.

DAVID SCHULMAN, et al.,

Defendants-Appellees.

# EXCERPTS OF RECORD

## Volume 2

On Appeal from the United States District Court

for the Southern District of California

No. 3:25-cv-03646-JO-BJW

Hon. Jinsook Ohta, District Judge

Robert Emert, Pro Se

2351 Vista Lago Terrace

Escondido, CA 92029

(760) 612-9328

robemert@msn.com

ER-1

# EXCERPTS OF RECORD
# TABLE OF CONTENTS

**Tab A**  Dismissal Order (Dkt. 8, Feb. 3, 2026)                    ER-3

**Tab B**  Clerk's Judgment (Dkt. 9, Feb. 4, 2026)                    ER-5

**Tab C**  Rule 59(e) Motion for Reconsideration (Dkt. 10, Feb. 6, 2026)    ER-7

**Tab D**  First Amended Complaint — Complete (Dkt. 3, Dec. 22, 2025)    ER-18

**Tab E**  IFP Order (Dkt. 7, Feb. 3, 2026)                          ER-43

**Tab F**  Notice of Appeal (Dkt. 11, Feb. 10, 2026)                ER-45

**Tab G**  Docket Sheet (as of Feb. 10, 2026)                       ER-55

**Tab H**  Forensic Transcript Analysis of Audio Recordings         ER -120

**EXCERPTS OF RECORD**

# ER-A

## Dismissal Order

Dkt. 8, Minute Order (Feb. 3, 2026)

Emert v. Schulman et al., No. 3:25-cv-03646-JO-BJW (S.D. Cal.)

ER-3

000062                                                                              62

*Pro se* Plaintiff Robert Emert sued his ex-wife, her legal team, and his children's court-appointed counsel under 42 U.S.C. §§ 1983 and 1985, asserting that they violated his rights in a 2021 state dependency proceeding by (1) failing to oppose the state court judge's hasty decision to place his son in a facility; and (2) conspiring with each other to prevent Plaintiff from presenting evidence against facility placement. *See generally* FAC. Additionally, Plaintiff alleges that Defendant Schulman violated his rights by making false representations to a federal court about the basis for the state court's dependency ruling. *Id.* par. 11 (alleging false statements made in 23-cv-0417-JLS-NLS at Dkt. 22).

To state a claim under § 1983, a plaintiff must plead both "(1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012). Section 1985 similarly "requires at least one of the wrongdoers in the alleged conspiracy to be a state actor." *Pasadena Republican Club v. W. Just. Ctr.*, 985 F.3d 1161, 1171 (9th Cir. 2021). Private parties generally do not act under color of state law, but, in limited circumstances, may be held liable as state actors if they act as "willful participant[s] in joint action with the State or its agents." *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003).

Here, Defendants--his ex-wife, her legal team, and his children's court-appointed counsel--are private individuals with no alleged nexus to state action. Plaintiff does not plead that any of these individuals acted jointly or in concert with the state judge presiding over the case or any other state actor. And acting as court-appointed counsel for minors in state dependency proceedings, without more, does not confer "state actor" status. *See Kirtley*, 326 F.3d at 1093 (court-appointed dependency counsel "do not act under color of state law for § 1983 purposes" because the "independence" of that role insulates them from § 1983 liability). Because Plaintiff has failed to show that Defendants acted under color of state law, he cannot maintain his § 1983 claim. *See id.* at 1092. Likewise, because he has not alleged that Defendants conspired with the state judge or any other state actor, he cannot maintain his § 1985 claim. *Pasadena Republican Club*, 985 F.3d at 1171 (dismissing § 1985 claim where Plaintiff "fail[ed] to allege that a state actor participated in the alleged conspiracy").

Accordingly, the Court DISMISSES Plaintiff's FAC [Dkt. 3 ] in its entirety because he has failed to state a claim upon which relief may be granted. Because Plaintiff cannot plead facts consistent with those already pled that would show state action by Defendants, the Court dismisses the case without leave to amend. *See Gonzalez v. Planned Parenthood*, 759, F.3d 1112, 1116 (9th Cir. 2014) ("'Futility of amendment can, by itself, justify the denial of... leave to amend.'") (quoting *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995)). The Court DENIES Plaintiff's motion for consolidated discovery [Dkt. 5 ] as moot. The Clerk of the Court is directed to close the case. Signed by Judge Jinsook Ohta on 2/3/2026. (iss) (Entered: 02/03/2026)

| | | |
|---|---|---|
| 02/04/2026 | 9 | CLERK'S JUDGMENT. IT IS SO ORDERED AND ADJUDGED that the Court dismisses Plaintiff's first amended complaint in its entirety because he has failed to state a claim upon which relief may be granted. Therefore, the Court dismisses the case without leave to amend and the case is hereby closed.(All non-registered users served via U.S. Mail Service)(rxc) (Entered: 02/04/2026) |
| 02/06/2026 | 10 | MOTION for Reconsideration Under Fed.R.Civ.P. 59(e) and/or - FRCP Rule 60(b)(1) by Robert Emert. (maq) (Entered: 02/06/2026) |

**PACER Service Center**

| Transaction Receipt | | | |
|---|---|---|---|
| 02/10/2026 19:18:10 | | | |
| PACER Login: | robemert | Client Code: | |
| Description: | Docket Report | Search Criteria: | 3:25-cv-03646-JO-BJW |
| Billable Pages: | 3 | Cost: | 0.30 |

ER-5

**EXCERPTS OF RECORD**

# ER-B

## Clerk's Judgment

Dkt. 9 (Feb. 4, 2026) — See Docket Entry on Page 3 of Dkt.

Emert v. Schulman et al., No. 3:25-cv-03646-JO-BJW (S.D. Cal.)

ER-6

*Pro se* Plaintiff Robert Emert sued his ex-wife, her legal team, and his children's court-appointed counsel under 42 U.S.C. §§ 1983 and 1985, asserting that they violated his rights in a 2021 state dependency proceeding by (1) failing to oppose the state court judge's hasty decision to place his son in a facility; and (2) conspiring with each other to prevent Plaintiff from presenting evidence against facility placement. *See generally* FAC. Additionally, Plaintiff alleges that Defendant Schulman violated his rights by making false representations to a federal court about the basis for the state court's dependency ruling. *Id.* par. 11 (alleging false statements made in 23-cv-0417-JLS-NLS at Dkt. 22).

To state a claim under § 1983, a plaintiff must plead both "(1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012). Section 1985 similarly "requires at least one of the wrongdoers in the alleged conspiracy to be a state actor." *Pasadena Republican Club v. W. Just. Ctr.*, 985 F.3d 1161, 1171 (9th Cir. 2021). Private parties generally do not act under color of state law, but, in limited circumstances, may be held liable as state actors if they act as "willful participant[s] in joint action with the State or its agents." *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003).

Here, Defendants--his ex-wife, her legal team, and his children's court-appointed counsel-- are private individuals with no alleged nexus to state action. Plaintiff does not plead that any of these individuals acted jointly or in concert with the state judge presiding over the case or any other state actor. And acting as court-appointed counsel for minors in state dependency proceedings, without more, does not confer "state actor" status. *See Kirtley*, 326 F.3d at 1093 (court-appointed dependency counsel "do not act under color of state law for § 1983 purposes" because the "independence" of that role insulates them from § 1983 liability). Because Plaintiff has failed to show that Defendants acted under color of state law, he cannot maintain his § 1983 claim. *See id.* at 1092. Likewise, because he has not alleged that Defendants conspired with the state judge or any other state actor, he cannot maintain his § 1985 claim. *Pasadena Republican Club*, 985 F.3d at 1171 (dismissing § 1985 claim where Plaintiff "fail[ed] to allege that a state actor participated in the alleged conspiracy").

Accordingly, the Court DISMISSES Plaintiff's FAC [Dkt. 3 ] in its entirety because he has failed to state a claim upon which relief may be granted. Because Plaintiff cannot plead facts consistent with those already pled that would show state action by Defendants, the Court dismisses the case without leave to amend. *See Gonzalez v. Planned Parenthood*, 759, F.3d 1112, 1116 (9th Cir. 2014) ("'Futility of amendment can, by itself, justify the denial of... leave to amend.'") (quoting *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995)). The Court DENIES Plaintiff's motion for consolidated discovery [Dkt. 5 ] as moot. The Clerk of the Court is directed to close the case. Signed by Judge Jinsook Ohta on 2/3/2026. (iss) (Entered: 02/03/2026)

| 02/04/2026 | 9 | CLERK'S JUDGMENT. IT IS SO ORDERED AND ADJUDGED that the Court dismisses Plaintiff's first amended complaint in its entirety because he has failed to state a claim upon which relief may be granted. Therefore, the Court dismisses the case without leave to amend and the case is hereby closed.(All non-registered users served via U.S. Mail Service)(rxc) (Entered: 02/04/2026) |
| 02/06/2026 | 10 | MOTION for Reconsideration Under Fed.R.Civ.P. 59(e) and/or - FRCP Rule 60(b)(1) by Robert Emert. (maq) (Entered: 02/06/2026) |

**PACER Service Center**

ER-7

**EXCERPTS OF RECORD**

# ER-C

## Rule 59(e) Motion for Reconsideration

Dkt. 10 (Feb. 6, 2026) — 10 Pages, Court-Stamped

Emert v. Schulman et al., No. 3:25-cv-03646-JO-BJW (S.D. Cal.)

ER-8

**ROBERT EMERT**
Plaintiff, Pro Se
2351 Vista Lago Terrace
Escondido, CA 92029
Telephone: (760) 612-9328
Email: robemert@msn.com



**FILED**

FEB 0 6 2026

CLERK. U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY_____ DEPUTY

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

ROBERT EMERT,
      Plaintiff,

v.

DAVID SCHULMAN; SARA BEAR;
MATTHEW CORD; CATIE YOUNG;
ANDREA SCHUCK; JESSE OLAGUE,
      Defendants.

Case No. 3:25-cv-03646-JAH-BJW
JO

## MOTION FOR RECONSIDERATION
## UNDER FED. R. CIV. P. 59(e)
## AND/OR FED. R. CIV. P. 60(b)(1)

---

### EXECUTIVE SUMMARY

---

This Court dismissed Plaintiff's 568-paragraph First Amended Complaint on a single ground: that "Plaintiff does not plead that any of these individuals acted jointly or in concert with the state judge presiding over the case or any other state actor." Dkt. 8. **That finding is factually wrong.**

The FAC names **five state actors as non-party co-conspirators**—Commissioner Ratekin, Judge Alksne, Supervising Judge Wood, Supervising Judge Hoy, DDA Balerio, and DAI Peña—and alleges in meticulous detail how each private Defendant conspired with those judicial and prosecutorial officers to

ı

ER-9

fabricate evidence, suppress witnesses, and obtain predetermined outcomes through fraud. FAC ¶¶ 55–57, 143–149.

This Court's dismissal rests on a manifest error of law: it applied *Kirtley v. Rainey*'s "public function" test while ignoring *Dennis v. Sparks*, 449 U.S. 24 (1980), the controlling Supreme Court authority on the "conspiracy/joint action" test that Plaintiff actually invoked. *Dennis* holds that "private persons, jointly engaged with state officials in the challenged action, are acting 'under color' of law." *Id.* at 27–28. The FAC alleges precisely such joint engagement—and this Court never addressed it.

Reconsideration should be granted because: (1) the Court committed a manifest error of law by failing to apply *Dennis v. Sparks*; (2) the Court's factual finding that no joint action was pled is contradicted by the operative complaint; and (3) dismissal without leave to amend was an abuse of discretion.

## I. LEGAL STANDARD

A Rule 59(e) motion may be granted when the court committed "manifest errors of law or fact." *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011). Alternatively, Rule 60(b)(1) permits relief from judgment based on "mistake"—including a court's own legal error. *Kemp v. United States*, 596 U.S. 528, 534 (2022) (unanimous) ("A judge's errors of law are indeed 'mistakes' under Rule 60(b)(1).").

Where a district court fails to apply controlling precedent, reconsideration is appropriate. *McDowell v. Calderon*, 197 F.3d 1253, 1255 n.1 (9th Cir. 1999) (en banc).

## II. THE COURT APPLIED THE WRONG TEST TO THE WRONG THEORY

### A. The Court Mischaracterized the Claims

Before applying the wrong legal test, the Court restated Plaintiff's claims in terms the FAC does not use. The Court characterized this case as alleging that Defendants violated Plaintiff's rights by "(1) failing to oppose the state court judge's

2

ER-10

hasty decision to place his son in a facility; and (2) conspiring with each other to prevent Plaintiff from presenting evidence against facility placement." Dkt. 8.

**That is not what the FAC alleges.** The FAC alleges a coordinated conspiracy *with* judicial officers—not merely among private parties—to fabricate evidence, suppress witnesses, exploit jurisdictional defects, and deprive Plaintiff of his fundamental parental rights through fraud. FAC ¶¶ 1–28, 143–149. The Court's characterization reduces a civil rights conspiracy to a legal malpractice grievance. These are fundamentally different claims with fundamentally different elements.

The Court further characterized the Schulman fabrication claim as merely "making false representations to a federal court about the basis for the state court's dependency ruling." Dkt. 8. Again, that is not what the FAC alleges. The FAC alleges that Defendant Schulman cited a "psychologist report" to the federal court that **does not exist in the state court record**. FAC ¶ 11; Exhibits B, B-1, B-2. That is not a "false representation" about a ruling—it is fabrication of evidence, independently actionable under *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001).

A court that mischaracterizes the claims will inevitably apply the wrong legal standard. That is what happened here.

## B. Plaintiff Alleged Conspiracy with State Actors—Not Independent State Action

The Court's dismissal rests entirely on the finding that Defendants "are private individuals with no alleged nexus to state action." Dkt. 8. To reach this conclusion, the Court cited *Kirtley v. Rainey*, 326 F.3d 1088, 1092–93 (9th Cir. 2003), for the proposition that court-appointed dependency counsel do not become state actors merely by virtue of their appointment.

That proposition is correct—but irrelevant. *Kirtley* addresses the "public function" test for state action. Plaintiff did not proceed under that theory. Plaintiff proceeded under the **conspiracy/joint action test** established by *Dennis v. Sparks*, 449 U.S. 24 (1980). These are different tests with different elements and different outcomes. The Court applied the wrong one.

## C. Dennis v. Sparks Controls—And Was Never Addressed

3

ER-11

In *Dennis*, the Supreme Court held unanimously:

> "[T]o act 'under color of' state law for § 1983 purposes does not require that the defendant be an officer of the State. It is enough that he is a willful participant in joint action with the State or its agents. Private persons, jointly engaged with state officials in the challenged action, are acting 'under color' of law for purposes of § 1983 actions."

*Dennis*, 449 U.S. at 27–28.

The procedural posture of *Dennis* is directly on point. There, as here, the district court dismissed private-party defendants for "failure to state a claim upon which relief can be granted" because, with the judge dismissed on immunity grounds, the remaining private defendants "could not be said to have conspired under color of state law." *Id.* at 26. The Supreme Court **reversed**. This Court's order repeats the exact error the Supreme Court corrected in *Dennis* forty-five years ago.

The Court's order does not cite *Dennis*. It does not distinguish *Dennis*. It does not acknowledge *Dennis* exists. Yet *Dennis* is a unanimous Supreme Court decision directly addressing the exact question presented: whether private parties alleged to have conspired with a judicial officer can be held liable under § 1983. The answer is yes.

## III. THE COURT'S FACTUAL FINDING IS CONTRADICTED BY THE COMPLAINT

The Court found that "Plaintiff does not plead that any of these individuals acted jointly or in concert with the state judge presiding over the case or any other state actor." Dkt. 8. This finding cannot be reconciled with the operative complaint.

### A. Named State Actor Co-Conspirators

The FAC expressly identifies the following state actors as participants in the conspiracy:

**Commissioner Patti Ratekin** — the judicial officer who prejudged the case, announcing "24-hour facility" placement within five minutes before receiving any

4

ER-12

evidence, and who improperly denied Plaintiff's valid peremptory challenge to retain jurisdiction. FAC ¶¶ 56–57, 145.

**Judge Margo Hoy** — Ratekin's supervising judge, who was a founding member of Defendant Schulman's law firm, creating an undisclosed conflict that ensured no supervisory oversight. FAC ¶ 147a.

**Supervising Judge William Wood** — Ratekin's initial supervisor, whose wife was friends and coworkers with Defendant Schuck, creating the "entry point for the conspiracy." FAC ¶ 56.

**DDA Dawn Balerio** — who suppressed her own exculpatory interview with Plaintiff's son stating "He's done nothing wrong. I want to be his witness for my dad." FAC ¶ 147.

**DAI Luis Peña** — whose 47 recorded admissions include observing that Defendant Cord "linked up with your ex-wife's attorney [Schulman]" and "now they're trying to put something together" against Plaintiff. FAC ¶¶ 150a, 299.

## B. Specific Allegations of Joint Action

The FAC alleges, with particularity, how each private Defendant acted *jointly* with these state actors:

**Defendant Schulman** fabricated a "psychologist report" that does not exist in the state court record and submitted it to federal court, and exploited his former law partner Judge Hoy's supervision of Commissioner Ratekin. FAC ¶¶ 11, 146.

**Defendant Cord** — Plaintiff's own son's attorney — aligned with opposing counsel Schulman against his own client on the record, joining to block Plaintiff's witnesses. FAC ¶¶ 259 (transcript: "Yeah. Your Honor, I'm certainly with Mr. Schulman on this.").

**Defendant Young** joined the coordinated witness suppression and admitted the case was "above my paygrade," yet advocated for facility placement of the wrong child. FAC ¶¶ 259, Ex. U.

5

ER-13

**Defendant Olague** breached confidentiality promises, weaponized therapeutic communications for court proceedings, and practiced in the same building complex as Defendant Schulman. FAC ¶ 53.

**Defendant Schuck** refused both May and October 2021 settlement offers, engaged in witness tampering, and made recorded threats against her own child. FAC ¶¶ 564(c).

The FAC further pleads the *Dennis* elements explicitly at ¶¶ 143–149, concluding: "The private Defendants cannot escape § 1983 liability by pointing to judicial or prosecutorial immunity. As the Supreme Court held in *Dennis*: '[W]e are not disposed to extend absolute immunity to . . . all persons [who] participate with him [the judge].' 449 U.S. at 28." FAC ¶ 149.

This Court found "no alleged nexus to state action." The complaint says otherwise—in 568 paragraphs, with recorded corroboration from the State's own investigator.

## IV. ADDITIONAL BINDING AUTHORITY THE COURT DID NOT ADDRESS

### A. Bretz v. Kelman (En Banc)

In *Bretz v. Kelman*, 773 F.2d 1026 (9th Cir. 1985) (en banc), the Ninth Circuit **reversed** dismissal of § 1983 and § 1985 claims where the plaintiff alleged "a conspiracy among police, prosecutors and personal enemies" who "committed perjury, threatened and coerced witnesses, and concealed and falsified evidence." *Id.* at 1027. This case alleges indistinguishable conduct. *Bretz* is binding en banc authority that was neither cited nor addressed.

### B. Miroth v. County of Trinity

*Miroth v. County of Trinity*, 136 F.4th 1135 (9th Cir. 2025), holds that Rooker-Feldman "applies only to suits alleging errors by the state courts in rendering judgment, as opposed to misconduct by litigants in obtaining such a judgment." *Id.* at 1141. Plaintiff alleges litigant fraud. *Miroth* was not addressed.

### C. Devereaux v. Abbey

6

*Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001), holds that deliberate fabrication of evidence violates due process—independently of any other claim. Plaintiff alleges Defendant Schulman cited a "psychologist report" to federal court that does not appear to exist. This standalone fabrication claim was not addressed.

## D. Hardwick v. County of Orange

*Hardwick v. County of Orange*, 844 F.3d 1112, 1118 (9th Cir. 2017), specifically held that fabrication and perjury in child-welfare dependency proceedings strip actors of immunity protections. The factual parallels to this case are direct. *Hardwick* was not addressed.

## E. Smiddy v. Varney

*Smiddy v. Varney*, 665 F.2d 261, 266–67 (9th Cir. 1981), holds that the presumption of independent judicial judgment is rebuttable when officers present false information. *Smiddy II*, 803 F.2d 1469, 1471 (9th Cir. 1986), reaffirms this. The FAC alleges fabricated evidence and suppressed exculpatory material were presented to the judicial officer. Neither *Smiddy* decision was addressed.

## V. DISMISSAL WITHOUT LEAVE TO AMEND WAS AN ABUSE OF DISCRETION

The Court concluded that Plaintiff "cannot plead facts consistent with those already pled that would show state action by Defendants." Dkt. 8. This conclusion rests on the erroneous legal premise that *Kirtley*'s public-function test is the only path to state action. Under *Dennis*, the facts already pled **do** show state action. No amendment is needed to cure what was never deficient.

Even if the Court determines the conspiracy allegations could be strengthened, the Ninth Circuit has held that "dismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment." *Polich v. Burlington N., Inc.*, 942 F.2d 1467, 1472 (9th Cir. 1991). Pro se pleadings must be construed liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The Court's order does not reflect liberal construction of these allegations.

7

## VI. THE PATTERN OF ERROR

This is not the first time this has happened. In *Emert v. San Diego Board of Supervisors*, Case No. 3:24-cv-00671-JO-MSB, this same Court dismissed Plaintiff's § 1983 claims with a similarly truncated analysis that failed to engage with controlling authority. The Ninth Circuit affirmed with a three-paragraph memorandum that cited *Manuel v. City of Joliet* but ignored its holding, applied *Thompson v. Clark*'s favorable termination requirement to a detention claim, and denied Plaintiff's FRAP 28(j) on *Miroth* without a single word of analysis.

The pattern is unmistakable: Plaintiff raises specific claims under specific authorities. The court restates those claims as something else. The court dismisses the restated claims. The actual claims—and the authorities supporting them—are never addressed.

In the Board of Supervisors case, the Court reframed a *Manuel* detention claim as a *Thompson* malicious prosecution claim. Here, the Court reframed a *Dennis* conspiracy claim as a *Kirtley* public-function claim. In both cases, the wrong test was applied to the wrong theory, and controlling authority was never mentioned.

This Court's repeated failure to engage with controlling authority across two separate cases, involving different defendants and different legal theories, "creates an appearance of predetermined outcome" that undermines confidence in the proceedings. Plaintiff respectfully submits that this pattern warrants careful examination.

## VII. RELIEF REQUESTED

Plaintiff respectfully requests that this Court:

**1.** Vacate the February 3, 2026 dismissal order (Dkt. 8) and the February 4, 2026 Clerk's Judgment (Dkt. 9);

**2.** Apply *Dennis v. Sparks*, 449 U.S. 24 (1980), to evaluate Plaintiff's conspiracy/joint action allegations under the correct legal standard;

**3.** Address *Miroth*, *Bretz*, *Devereaux*, *Hardwick*, and *Smiddy* before ruling on the sufficiency of Plaintiff's claims;

8

ER-16

**4.** In the alternative, grant leave to amend; and

**5.** Allow the previously filed motion for consolidated discovery (Dkt. 5) to proceed.

Respectfully submitted,

Dated: February 6, 2026

**/S/ Robert Emert**
Plaintiff, Pro Se
2351 Vista Lago Terrace
Escondido, CA 92029
(760) 612-9328
robemert@msn.com

9

ER-17

## PROOF OF SERVICE

I, Robert Emert, declare:

On February 6, 2026, I served the foregoing MOTION FOR RECONSIDERATION UNDER FED. R. CIV. P. 59(e) AND/OR FED. R. CIV. P. 60(b)(1) on all parties by transmitting a true copy via electronic mail and/or U.S. Mail to:

All Defendants at their addresses of record as set forth in the operative complaint.

As Defendants have not yet appeared in this action and service is being effectuated through the United States Marshal pursuant to the Court's IFP order (Dkt. 7), Plaintiff is filing this motion with the Court and will provide copies to Defendants through the same service mechanism.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on February 6, 2026, at Escondido, California.


**/S/ Robert Emert**
Plaintiff, Pro Se

10

**EXCERPTS OF RECORD**

# ER-D

## First Amended Complaint — Complete

Dkt. 3 (Dec. 22, 2025) — 24 Pages, Operative Pleading

Emert v. Schulman et al., No. 3:25-cv-03646-JO-BJW (S.D. Cal.)

ER-19

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA



FILED

DEC 2 2 2025

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

ROBERT EMERT,

Plaintiff,

v.

**Case No. 25-cv-3646-JAH-BJW**

DAVID S. SCHULMAN, an individual;
SARA BEAR, an individual;
MATTHEW CORD, an individual;
CATIE YOUNG, an individual;
ANDREA SCHUCK, an individual;
JESSE OLAGUE, Psy.D., an individual;
MOORE, SCHULMAN & MOORE, APC,
    a California professional corporation;
ANDREW P. JOHNSON, APC,
    a California professional corporation;
GRIFFITH, YOUNG & LASS,
    a California law firm; and
SAN DIEGO KIDS FIRST,
    A Professional Psychology Corporation,

Defendants.

---

# FIRST AMENDED COMPLAINT FOR DAMAGES
## 42 U.S.C. §§ 1983, 1985(2)

---

## JURY TRIAL DEMANDED

ER-20

1

## Contents

I. INTRODUCTION .......................................................................... 2

II. JURISDICTION AND VENUE .................................................... 4

III. PARTIES ..................................................................................... 5

IV. FACTUAL ALLEGATIONS ........................................................ 6

    A. The Fraud ............................................................................... 6

    B. The Predetermined Outcome ................................................. 7

    C. The Conspiracy Exposed ....................................................... 9

    D. The Vindication ................................................................... 13

    E. State Action ......................................................................... 14

V. CLAIMS FOR RELIEF ............................................................... 14

    COUNT ONE: 42 U.S.C. § 1983 — Procedural Due Process ..... 14

    COUNT TWO: 42 U.S.C. § 1983 — Fabrication of Evidence ..... 15

    COUNT THREE: 42 U.S.C. § 1985(2) — Witness Tampering Conspiracy ..... 16

VI. PRAYER FOR RELIEF ............................................................. 17

VII. JURY DEMAND ....................................................................... 17

VIII. VERIFICATION ...................................................................... 17

**CERTIFICATE OF SERVICE** ....................................................... 18

    EXHIBIT LIST ........................................................................... 22

    Exhibits Attached to First Amended Complaint ........................ 22

    Exhibits Incorporated by Reference from Original Complaint (ECF Doc. 1) ..... 23

## I. INTRODUCTION

This case exposes a profit-driven scheme to push unnecessary facility placement—the same pattern of judicial corruption that led to federal convictions and over $200 million in damages in the Pennsylvania "kids-for-cash" scandal. *See Wallace v. Ciavarella*, No. 3:09-cv-286 (M.D. Pa. Aug. 16, 2022) ($206 million judgment against judges who accepted kickbacks to send children to for-profit detention facilities). As evidenced by Defendants' rejection of full-custody settlements solely because they excluded facility threats (Exs. C, D)—prolonging litigation while ignoring unanimous professional recommendations against placement (Exs. N, N-

FIRST AMENDED COMPLAINT FOR DAMAGES
42 U.S.C. §§ 1983, 1985(2)
JURY TRIAL DEMANDED

2

1, N-2, O, O-1, O-2)—the scheme here caused severe harm to a child and nearly killed his father.

For almost two years—under two different judges—Plaintiff and his son B.E. and daughter S.E, had stable 50/50 custody and where FCS initially awarded Plaintiff 60% custody. Three Family Court Services reports, each based on in-depth investigation including two separate child interviews, unanimously recommended continued shared custody. Nine IEP team members. A treating psychologist. No one—not a single professional who knew this child—ever recommended facility placement for B.E. Then Commissioner Patti Ratekin was assigned. Within five minutes of taking the case—before reviewing any file, hearing any witness, or ordering any evaluation—she announced that Plaintiff's son should be placed in a "24-hour facility." Defendant Schulman and Defendant Schuck fell in line immediately. Ratekin then blew past Plaintiff's valid peremptory challenge and brought in Minor's Counsel Defendants Cord and Young to rubber-stamp the predetermined outcome. They did exactly that—aligning with opposing counsel, ignoring the wall of contrary evidence, blocking witnesses, and silencing a 14-year-old child who filed a police report and restraining order against his own attorney trying to defend himself. When the stress of this coordinated assault triggered Plaintiff's near-fatal heart attack, Defendants characterized it as merely "alleged" and pushed forward to obtain default judgment while Plaintiff lay hospitalized. Every defendant, at every turn, ignored every piece of evidence contradicting the facility narrative—because facility was never the means. Facility was the objective.

The predetermined outcome is exposed by its own timeline. Consider the mathematical impossibility: Commissioner Ratekin announced "facility" within five minutes of assignment on February 4, 2021. Two years later, Defendant Schulman told a federal court that "Commissioner Ratekin based this recommendation on the Psychologist report." (Ex. B.) No such report exists. No such report *could* exist—because no evaluation could be ordered, conducted, and reviewed in five minutes. The fabrication was invented after the fact to justify what was predetermined before any evidence existed. Twice Plaintiff offered settlements giving Defendant Schuck everything she asked for—the only condition being no facility threat. (Exs. C, D.) Twice she refused. On September 16, 2021, Plaintiff personally emailed Schuck: "Andrea, seriously, these [pejorative omitted] don't

care about our kids or you. Their despicable strategies have put both our kids in harms way." (Ex. X.) She did not respond. Thirteen days later, Plaintiff suffered a widowmaker heart attack. Defendants obtained default judgment while he lay hospitalized. Defendant Young told Plaintiff it was "above her paygrade" to challenge the facility narrative and asked: "Why don't you just let them put him in a facility?" Two neutral officials—with no stake in family court proceedings—independently confirmed what the evidence shows. District Attorney Investigator Luis Peña, after reviewing the case, stated that Minor's Counsel "lined up" with opposing counsel and that Plaintiff lost his parental rights because he "pissed them off." (Ex. A-1.) Deputy District Attorney Dawn Balerio interviewed B.E. and observed he was "very intelligent," "articulate," "sociable," and "advocating for himself"—the precise opposite of a child requiring institutionalization. (Ex. DD.) The child Defendants claimed needed a "24-hour facility" was, according to the prosecutor herself, thriving.

This is fraud upon the court. Not a custody dispute. Not a disgruntled litigant. Fraud—the kind federal courts have inherent, timeless authority to address under *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944), because "tampering with the administration of justice involves far more than an injury to a single litigant." For four years, Plaintiff exhausted every state court remedy—two trial court judges, the Fourth District Court of Appeal, the California Supreme Court—and never once received an evidentiary hearing. Not one court examined the recordings. Not one court reviewed the transcripts. Under *Miroth v. County of Trinity*, 136 F.4th 1135 (9th Cir. 2025), this Court has jurisdiction over litigant misconduct preceding state court judgment. Under *Dennis v. Sparks*, 449 U.S. 24 (1980), private parties who conspire with judicial officers act under color of state law. Under *Devereaux v. Abbey*, 263 F.3d 1070 (9th Cir. 2001), fabrication of evidence violates the Constitution. The evidence is here. The law is clear. Plaintiff seeks damages—and accountability for fraud that has no innocent explanation.

## II. JURISDICTION AND VENUE

1. This Court has jurisdiction under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343(a)(3) (civil rights). Venue is proper under 28 U.S.C. § 1391(b) because the events giving rise to this action occurred in this District.

4

2. **Timeliness.** This action is timely under multiple doctrines:

  – **Continuing Violation:** The deprivation continues—Plaintiff still does not see his daughter; his health remains shattered from litigation-induced cardiac events.

  – **Fraud Upon the Court:** Schulman's fabrication of the "psychologist report" to a federal tribunal constitutes fraud upon the court. No statute of limitations applies. *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991).

  – **Equitable Tolling:** Plaintiff suffered two STEMI heart attack on September 29, 2021 and Dec 9 2024 (Ex. J series.) Defendant Bear characterized these documented cardiac events as merely "alleged." (Ex. H.)

### III. PARTIES

3. **Plaintiff ROBERT EMERT** was the stay-at-home parent and primary caregiver for B.E. (born 06/11/07) for his entire life until these events.

4. **Defendant DAVID SCHULMAN** was the architect: he coordinated the predetermined agenda, fabricated the "psychologist report," threatened Regional Center, and directed suppression of exculpatory evidence.

5. **Defendant SARA BEAR** participated by characterizing Plaintiff's STEMI heart attack as "alleged" and opposing accommodation requests while he was hospitalized, ensuring Plaintiff could not defend himself while medically incapacitated.

6. **Defendant MATTHEW CORD** was Minor's Counsel for B.E. He met his client four times for less than thirty minutes. Per court transcripts, he did not know what an IEP was. He never contacted B.E.'s nine-member IEP team, case manager. He aligned with Schulman ("I'M CERTAINLY WITH MR. SCHULMAN"), remained silent when facility was announced without support, and continued "representing" B.E. after B.E. filed a police report and TRO against him. Cord even got into a closed car with B.E. and harassed him and that is one of the reasons why B.E. filed a TRO and police report against Cord. B.E. was by himself when he made the reports to the court and the police department.

FIRST AMENDED COMPLAINT FOR DAMAGES
42 U.S.C. §§ 1983, 1985(2)
JURY TRIAL DEMANDED

ER-24

7. **Defendant CATIE YOUNG** was Minor's Counsel for S.E. She aligned with Schulman ("ME, TOO") and remained silent on October 4. She told Plaintiff it was "above her paygrade" to challenge the facility narrative and that Plaintiff should just let them "put Bryce in a facility."

8. **Defendant ANDREA SCHUCK** directed and funded the conspiracy. She twice refused settlements giving her everything except facility, ignored Plaintiff's personal plea warning that Schulman was harming her own children, threatened her own son with "Juvi" for wanting to live with his father, and continued funding the predetermined agenda despite evidence it was destroying her son.

9. **Defendant JESSE OLAGUE** provided a predetermined evaluation contradicting three FCS reports, the IEP team, and B.E.'s treating psychologist. His office was directly across the street from Schulman's firm. He was retained out-of-network—Schuck chose Schulman's neighbor over her own insurance network.

10. **Entity Defendants MSM, APJ, GYL, and SDKF** are sued based on direct involvement and/or ratification, not respondeat superior.

## IV. FACTUAL ALLEGATIONS

### A. The Fraud

11. Defendant David Schulman fabricated evidence to a federal court. On 04/20/23, he represented that "Commissioner Ratekin based this recommendation on the Psychologist report." (Ex. B, Case No. 23-cv-0417-JLS-NLS, Doc. 22.)No such report exists. The Register of Actions confirms: no psychological evaluation ordered, no psychologist appointed, no report filed. (Ex. B-1, B-2.)

12. This fabrication was necessary because Commissioner Ratekin announced "facility" placement for Plaintiff's son within five minutes of taking the case—before reviewing any file or receiving any evaluation. (Ex. F, 00:04:20.) The "psychologist report" was invented after the fact to legitimize a predetermined outcome that had no evidentiary basis.

6

13. Plaintiff brings this action for damages caused by Defendants' misconduct. Consistent with *Miroth v. County of Trinity*, 136 F.4th 1135, 1145 (9th Cir. 2025), Rooker-Feldman "does not bar claims for injuries caused by misconduct by litigants that preceded the issuance of a state court order." Plaintiff does not seek to modify any state order. Plaintiff seeks damages for fraud.

13A. Plaintiff does not ask this Court to determine custody, visitation, or the best interests of any child, and does not seek to vacate, modify, or enjoin any state court order. Plaintiff seeks only damages for Defendants' alleged misconduct.

14. **Incorporation by Reference.** Plaintiff incorporates by reference the Original Complaint filed December 18, 2025 (ECF Doc. 1), including all exhibits attached thereto. The detailed factual allegations contained therein—including but not limited to Defendant Cord's systematic failure to investigate his own client's circumstances, Defendant Schulman's threats against the San Diego Regional Center, the exposed conflicts of interest among supervising judges, Defendant Schuck's documented history of provoking B.E. resulting in police calls, and the exposed pattern of witness suppression—are incorporated as if fully set forth herein.

## B. The Predetermined Outcome

### 1. Day One: February 4, 2021

15. Commissioner Ratekin was assigned this case on February 4, 2021. Within five minutes—before reviewing any file, hearing any evidence, or receiving any professional evaluation—she announced:

   "THE PLACE WHERE I SEE OUR CHILD HEADING IS SOME KIND OF 24-HOUR SCHOOL WHERE HE'S GOING TO BE IN A BOARDING SCHOOL TYPE OF SITUATION."

(Ex. F, 00:04:20–00:05:10.)

16. This announcement was impossible if based on evidence. No evaluation could be ordered, conducted, and reviewed in five minutes. Before this date, no professional who knew B.E.—not his nine-member IEP team, not his treating psychologist, not three Family Court Services reports spanning two

FIRST AMENDED COMPLAINT FOR DAMAGES
42 U.S.C. §§ 1983, 1985(2)
JURY TRIAL DEMANDED

ER-26

years—had ever recommended facility placement. (Exs. N, N-1, N-2, O, O-1, O-2.)

17. **The Wall of Evidence Ratekin Ignored.** Before Commissioner Ratekin took this case, B.E.'s custody had been stable for nearly two years under two prior judges. Three FCS reports—each following in-depth investigation including two separate child interviews with B.E.—unanimously recommended 50/50 custody. (Exs. N, N-1, N-2.) B.E.'s nine-member IEP team—special education teachers, school psychologists, autism specialists who had known him for years—never recommended facility. (Exs. O, O-1.) B.E.'s treating psychologist said he was "doing fine." (Ex. O-2.) Plaintiff provided Minor's Counsel Cord with a comprehensive list of witnesses and professionals to contact—teachers, therapists, IEP team members, family friends who had known B.E. his entire life. (Ex. P.) Cord contacted none of them. The only "evidence" supporting facility came from Defendant Olague—whose office was across the street from Schulman's firm, who was retained out-of-network, and whose evaluation contradicted every other professional who knew B.E.

## 2. Day Last: October 4, 2021

18. Eight months later, Commissioner Ratekin delivered exactly the outcome she announced on day one. When informed B.E. missed first period, she stated: "I may need to look for some kind of **facility** to put him in." (Ex. F-1, 00:01:46.) When Plaintiff objected—"Nobody has ever recommended that… There's no evidence for that… I've got like 30 witnesses"—she responded: "I'VE MUTED YOU." (Ex. F-1, 00:04:30.)

19. The agenda announced on day one never changed because it was never based on evidence.

## 3. The Peremptory Challenge Proves Predetermination

20. On February 9, 2021, Plaintiff filed a timely peremptory challenge under CCP § 170.6. Commissioner Ratekin denied it based on a verbal stipulation from February 4. But under *In re Marriage of Goodarzirad*, 185 Cal.App.3d 1020, 1025 (1986), filing a peremptory challenge withdraws prior consent.

8

California Rules of Court 2.831 and 2.834 require written stipulations—none existed. *People v. Hull*, 1 Cal.4th 266, 275 (1991), confirms a timely peremptory challenge divests jurisdiction; improper denial voids subsequent proceedings. *People v. Superior Court (Lavi)*, 4 Cal.5th 1164, 1172 (1993), holds improper assignment voids all subsequent acts for lack of jurisdiction.

21. **Nexus:** A judge without a predetermined agenda has no reason to refuse a litigant's automatic statutory right to a different judge. Commissioner Ratekin's refusal to grant the challenge—combined with her five-minute facility announcement—supports an inference of coordination with Defendants who benefited from her continued jurisdiction. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970) (agreement may be inferred from conduct). Plaintiff does not ask this Court to vacate or modify any state order. Plaintiff seeks only damages for Defendants' pre-order misconduct—precisely the relief *Miroth* holds is not barred by Rooker-Feldman.

## C. The Conspiracy Exposed

## A. Minor's Counsel Betrayed Their Clients

22. On May 11, 2021, Plaintiff had school witnesses available—a vice principal and teacher who knew B.E. for five years—whose testimony would have contradicted the facility narrative. When the court offered a continuance:

MR. SCHULMAN: YOUR HONOR, I CAN'T DO THURSDAY MORNING. MR. CORD: YEAH. YOUR HONOR, I'M CERTAINLY WITH MR. SCHULMAN ON THIS. MS. YOUNG: ME, TOO.

(Ex. G-2, RT 149–150.)

23. **Nexus:** Defendants Cord and Young were Minor's Counsel—appointed to represent the children, not Defendant Schuck. A child's attorney does not say "I'M CERTAINLY WITH MR. SCHULMAN" to block witnesses who would help their own clients unless they have abandoned independent advocacy. This alignment with opposing counsel against their clients' interests satisfies *Dennis v. Sparks*, 449 U.S. 24, 27 (1980) ("willful participant in joint activity").

FIRST AMENDED COMPLAINT FOR DAMAGES
42 U.S.C. §§ 1983, 1985(2)
JURY TRIAL DEMANDED

ER-28

9

24. Earlier that day, IEP Case Manager Trish Fleming testified Cord never contacted anyone on B.E.'s nine-person IEP team. (Ex. G-1, RT 113–114.) Schulman's response: "MR. CORD IS NOT ON TRIAL."

25. **Cord's Systematic Failure.** Cord met with his 14-year-old client approximately four times for less than thirty minutes each. He did not know what an IEP was—asking Fleming to explain it during trial—yet purported to recommend residential facility placement for a special-needs child. He deliberately avoided contacting Trish Fleming, the case manager the school principal designated as the primary contact for all matters concerning B.E. He ignored B.E.'s pleas for help as seen in B.E. letters he wrote. He contacted none of the nine IEP team members who had known B.E. for years. Instead, he aligned with Schulman's predetermined narrative from day one.

26. **B.E. Himself Rejected Cord.** B.E.—then 14 years old—recognized Cord's failure to represent his interests. B.E. filed a police report against Cord. B.E. filed a temporary restraining order against Cord. B.E. wrote a letter to the court, witnessed by five adults who had known him most of his life, begging to be heard. (Exs. A, K, L.) The court ignored all of it. Cord continued "representing" a client who had sought police protection from him.

## B. The Silence That Proves Conspiracy

27. On October 4, 2021, when Commissioner Ratekin announced "facility" placement with zero professional support, Minor's Counsel Cord and Young were present. Neither objected. They had ethical duties to B.E. and S.E.—not to Schuck. A child's attorney hearing a judge announce an outcome unsupported by any recommendation has one duty: object. Their coordinated silence is inexplicable absent prior agreement.

## C. Retaliation: The Supervised Visitation Order

28. On September 29, 2021, Plaintiff suffered a near-fatal STEMI heart attack. On September 30, 2021—while Plaintiff was hospitalized—Commissioner Ratekin ordered supervised visitation under Rule 5.151 based on a witness affidavit that merely reported fraud by the child psychologist. (Ex. Y, Bates 898-899.) The same week, B.E. had filed his police report, TRO, and letter

against Cord. The "supervised visitation" order was retaliation—punishment for evidence that contradicted the predetermined narrative.

29. On October 4, 2021, Commissioner Ratekin recused. But she signed the judgment on October 5, 2021—after relinquishing jurisdiction. Under *People v. Mayfield*, 177 Cal.App.3d 780 (1986), a judge loses all authority upon recusal. These post-recusal orders are void.

## D. The Settlement Refusals Prove the Agenda

30. On May 10, 2021, Plaintiff offered Defendant Schuck everything—custody, support, property. He asked only that B.E. not be placed in a facility. Every Defendant refused. (Ex. C, C-1.) On October 1, 2021, Plaintiff made an identical offer. Again refused. (Ex. D, D-1.)

31. **Nexus:** If child welfare were the objective, Defendants would have accepted a settlement giving them everything except facility. Their refusal proves facility was the objective, not the means.

32. On September 16, 2021—thirteen days before Plaintiff's heart attack—Plaintiff personally pleaded with Schuck: "Andrea, seriously, these [pejorative omitted] don't care about our kids or you. Their despicable strategies have put both our kids in harms way." (Ex. X.) She did not respond. Despite being warned Schulman's strategy harmed her own children, she continued funding the conspiracy—establishing her as a willful participant, not a passive client.

33. **Schuck Threatened Her Own Son.** In a recorded call, Schuck told B.E. that if he "ran away" to be with his father, she would put him in "Juvi." (Ex. X-1.) This threat—using juvenile detention against a child who wanted to live with his other parent—demonstrates Schuck's active participation in the predetermined agenda. She weaponized the system against her own son.

## E. The Exploitation of Plaintiff's Medical Emergency

34. On September 29, 2021, Plaintiff suffered a STEMI heart attack—100% blockage of the left anterior descending artery, known as "the widowmaker." (Ex. J series.) On November 30, 2021, while Plaintiff remained medically

11

incapacitated, Defendants obtained a default judgment stripping Plaintiff of custody and imputing income of $96,000 per year to a man receiving SNAP benefits. (Exs. L, L-1, L-2, M series.)

35. Defendant Bear repeatedly characterized this documented, life-threatening cardiac event as merely "alleged"—despite possessing complete medical records. (Ex. H.) Bear used the word "alleged" to defeat Plaintiff's ADA accommodation requests, ensure Plaintiff could not defend himself while hospitalized, and cast false aspersions on Plaintiff's character before the court.

## F. The Regional Center Threat Proves Consciousness of Guilt

36. On October 29, 2021, Schulman threatened the San Diego Regional Center with an injunction to block independent evaluation. (Ex. T.) An attorney does not threaten to enjoin independent evaluation unless he knows it will disprove his narrative. Schulman wanted Defendant Olague—whose office was directly across the street from Schulman's firm—not an independent evaluation from the respected Regional Center.

## G. Independent Law Enforcement Confirmed the Conspiracy

37. DAI Luis Peña—a neutral law enforcement professional with no stake in the family court—made recorded admissions including:

"Where is the meat and potatoes of why she should have more than 50% custody?"

"I think they [Matt Cord] lined up with your ex-wife. I don't believe they're strictly just by themselves trying to do the best for him [Bryce]. I think now they line together with your basically ex wife's attorney [Schulman] and now they're trying to put something together… that does not make sense to me when you have an attorney and basically that's supposed to be just a child's attorney. It's like that attorney [Cord] should be talking to you. They should not just be trying to figure things out with other attorney [Schulman] and pushing, pushing and pushing and pushing."

When asked why Plaintiff lost all parental rights: "**You pissed them off.**"

12

(Ex. A-1.)

38. **Nexus:** DAI Peña's "meat and potatoes" question confirms Defendants lacked the "clear and convincing evidence" required under *Santosky v. Kramer*, 455 U.S. 745 (1982). His description of Cord "lining up" with Schulman and "pushing, pushing and pushing" confirms that Defendant Cord betrayed his fiduciary duty to his 14-year-old client by aligning with opposing counsel rather than independently advocating for Bryce's best interests. *This independent corroboration from a neutral law enforcement officer transforms circumstantial inference into direct evidence of the "meeting of minds" required under Dennis, 449 U.S. at 27–28.* At the pleading stage, a plaintiff need only allege facts permitting a reasonable inference of conspiracy. *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002).

## H. No Innocent Explanation Exists

39. The alleged conduct admits no good-faith interpretation: Ratekin prejudged "facility" within five minutes without evidence; Defendants exploited jurisdictional defects without objection; Minor's Counsel aligned with opposing counsel rather than their child clients; B.E. himself filed a police report and TRO against his own attorney; Schuck threatened her own son with "Juvi" for wanting to live with his father; all Defendants refused settlements excluding facility; and neutral law enforcement independently confirmed coordination. Taken together, these allegations support a reasonable inference of coordinated misconduct rather than independent, good-faith litigation choices.

## D. The Vindication

40. In May 2024, B.E. turned 18 and immediately returned to live with Plaintiff. (Ex. W.) Within six months, he earned his high school diploma, obtained his driver's permit, and enrolled in college. During the years of forced separation, Defendants held institutional placement over B.E.'s head— Schuck threatening "Juvi" if he went to his father. Yet after two and a half years under Schuck's custody, B.E. had no diploma and no driver's license. Six months with Plaintiff: diploma, permit, college.

FIRST AMENDED COMPLAINT FOR DAMAGES
42 U.S.C. §§ 1983, 1985(2)
JURY TRIAL DEMANDED

ER-32

13

41. The moment B.E. had the legal ability to choose, he chose his father—the same father Defendants spent four years portraying as unfit – but never ONCE provided "clear and convincing" evidence for that. This voluntary return proves the facility narrative was always a fraud – but that facility narrative cause irreparable harm to B.E. - high school years lost – terrorized by a system that was supposed to protect him.

## E. State Action

42. Plaintiff alleges Defendants acted under color of state law as willful participants in joint activity with a state judicial officer. *Dennis v. Sparks*, 449 U.S. 24 (1980); *Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982).

43. **Nexus:** This is not ordinary litigation conduct. Plaintiff alleges the facility outcome was announced before evidence, implemented despite contrary professional consensus, defended with fabricated evidence, and confirmed by neutral law enforcement as a coordinated "line up." These facts plausibly establish the joint participation required for state action.

## V. CLAIMS FOR RELIEF

## COUNT ONE: 42 U.S.C. § 1983 — Procedural Due Process

## Against All Defendants

44. Plaintiff realleges and incorporates by reference paragraphs 1 through 43.

45. The Fourteenth Amendment protects parental rights as fundamental liberty interests requiring clear and convincing evidence before deprivation. *Santosky v. Kramer*, 455 U.S. 745, 753 (1982) ("clear and convincing" standard); *Stanley v. Illinois*, 405 U.S. 645, 651 (1972) (parental interest "far more precious than any property right"); *Troxel v. Granville*, 530 U.S. 57, 65 (2000) ("perhaps the oldest of the fundamental liberty interests").

46. **Nexus:** Plaintiff's custodial rights and parental relationship were severely restricted—reduced to supervised visitation imposed while Plaintiff was hospitalized and unable to defend himself—after two years of 50/50 custody, three FCS reports recommending shared custody, and zero findings of unfitness. The only "evidence" was a predetermined agenda announced in

14

five minutes and later justified with a fabricated report. This is the precise constitutional violation *Santosky* prohibits.

47. Defendants caused this deprivation by: blocking witnesses who would have contradicted the facility narrative (Ex. G-2); suppressing IEP team evidence (Ex. G-1); promoting a fabricated "psychologist report" (Ex. B); silencing Plaintiff at critical moments (Ex. F-1); obtaining default judgment while Plaintiff was hospitalized (Ex. L); and retaliating with supervised visitation when B.E. himself filed evidence contradicting the narrative (Exs. A, K, L).

48. **Damages.** As a direct and proximate result of Defendants' conduct, Plaintiff suffered and continues to suffer: (a) loss of parental relationship with B.E. for approximately three years; (b) complete loss of relationship with daughter S.E. continuing to present; (c) STEMI heart attack requiring emergency cardiac intervention; (d) ongoing cardiac complications; (e) emotional distress including depression, anxiety, and trauma; (f) litigation costs including filing fees, transcript costs, and travel expenses; (g) lost income and employment opportunities; and (h) other damages to be proven at trial.

49. **Res Judicata Does Not Apply.** *Hardwick v. County of Orange*, 980 F.3d 1258, 1264 (9th Cir. 2020), holds constitutional familial rights are "personal" and "without identical issues, no preclusion." *Haring v. Prosise*, 462 U.S. 306, 313 (1983), confirms no collateral estoppel where the issue was not "actually litigated" in the prior proceeding. The state court never adjudicated whether Defendants fabricated evidence or conspired to deprive Plaintiff of constitutional rights. Those issues were never litigated—they are litigated here for the first time.

## COUNT TWO: 42 U.S.C. § 1983 — Fabrication of Evidence

## Against Schulman, MSM, and others who knowingly joined

50. Plaintiff realleges and incorporates by reference paragraphs 1 through 43.

51. The Constitution prohibits deprivation of liberty through deliberately fabricated evidence. *Devereaux v. Abbey*, 263 F.3d 1070, 1074–75 (9th Cir. 2001) (en banc).

FIRST AMENDED COMPLAINT FOR DAMAGES
42 U.S.C. §§ 1983, 1985(2)
JURY TRIAL DEMANDED

52. **Nexus:** Schulman represented to a federal court that a "psychologist report" supported the facility recommendation. No such report exists. This is not ambiguous evidence or disputed interpretation—it is fabrication of a document that never existed to justify a predetermined outcome.

53. **No Immunity.** *Hardwick v. County of Orange*, 844 F.3d 1112, 1116 (9th Cir. 2017) ("Officials who fabricate evidence are not entitled to qualified immunity"). *Crowe v. County of San Diego*, 608 F.3d 406, 440 (9th Cir. 2010) (no immunity for fabrication in proceedings involving children). *Benavidez v. County of San Diego*, 993 F.3d 1134, 1147 (9th Cir. 2021) (no qualified immunity for fabricated reports in child welfare matters). Schulman's conduct falls squarely within *Devereaux*'s prohibition—this is not disputed evidence or conflicting interpretation; it is fabrication of a document that never existed.

## COUNT THREE: 42 U.S.C. § 1985(2) — Witness Tampering Conspiracy

## Against Schulman, Bear, Cord, Young, Schuck, MSM, APJ, GYL

54. Plaintiff realleges and incorporates by reference paragraphs 1 through 43.

55. Section 1985(2) prohibits conspiracies to deter witnesses from testifying or to injure parties for testimony given.

56. **Nexus:** Defendants conspired to obstruct testimony by: coordinating to block school witnesses ("I'M CERTAINLY WITH MR. SCHULMAN") (Ex. G-2); cutting off Fleming's testimony when it revealed Cord's failure to investigate (Ex. G-1); threatening Regional Center with injunction to prevent independent evaluation (Ex. T); suppressing IEP team testimony contradicting the facility narrative (Exs. O, O-1); and retaliating against Plaintiff with supervised visitation when B.E. submitted evidence contradicting the narrative.

57. As a direct result, Plaintiff was denied the opportunity to present witnesses who would have established the absence of any evidentiary basis for facility placement. Under *Santosky v. Kramer*, 455 U.S. 745, 769 (1982), parental termination requires "clear and convincing evidence." The blocked witnesses would have demolished the facility narrative and proven

Defendants lacked any evidence meeting this standard—which is precisely why Defendants blocked them.

## VI. PRAYER FOR RELIEF

Plaintiff requests:

1. Compensatory damages according to proof;

2. Punitive damages based on Defendants' willful, malicious, and fraudulent conduct—including Schulman's deliberate fabrication of evidence to a federal tribunal—in conscious disregard of Plaintiff's constitutional rights;

3. Costs and interest;

4. Such other relief as the Court deems just.

## VII. JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

## VIII. VERIFICATION

I, ROBERT EMERT, am the Plaintiff in this action. I have read the foregoing First Amended Complaint and know its contents. The factual allegations set forth herein are true to the best of my knowledge, information, and belief, and as to those matters stated on information and belief, I believe them to be true.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on December 22, 2025, at Escondido, California.

Dated: 12/22/25

Respectfully submitted,

/s/ Robert Anthony Emert

FIRST AMENDED COMPLAINT FOR DAMAGES
42 U.S.C. §§ 1983, 1985(2)
JURY TRIAL DEMANDED

ROBERT EMERT Plaintiff, In Pro Per 2351 Vista Lago Terrace Escondido, CA 92029 Telephone: (760) 612-9328 Email: robemert@msn.com

**CERTIFICATE OF SERVICE**

**NOTICE OF SERVICE OF PROCESS**

**A. SERVICE OF PROCESS — INDIVIDUAL DEFENDANTS**

The following individual Defendants will be personally served pursuant to FRCP 4(e)(2)(A):

| No. | Defendant | Address for Personal Service |
|---|---|---|
| 1 | David S. Schulman, Esq. | 12220 El Camino Real, Suite 300, San Diego, CA 92130 |
| 2 | Sara Bear, Esq. | 12220 El Camino Real, Suite 300, San Diego, CA 92130 |
| 3 | Matthew Cord, Esq. | 440 S. Melrose Drive, Suite 260, Vista, CA 92081 |
| 4 | Catie Young, Esq. | 1525 Faraday Avenue, Suite 140, Carlsbad, CA 92008 |
| 5 | Andrea Schuck | 3557 Monroe St., Carlsbad, CA 92008 |
| 6 | Jesse Olague, Psy.D. | 12625 High Bluff Drive, Suite 204, San Diego, CA 92130 |

**B. SERVICE OF PROCESS — CORPORATE DEFENDANTS**

The following corporate Defendants will be served through their registered Agent for Service of Process pursuant to FRCP 4(h)(1)(B) and California Corporations Code § 1702. Agent information was obtained from the California Secretary of State business entity records:

| No. | Corporate Defendant | Registered Agent | Agent Address |
|---|---|---|---|
| 7 | Moore, Schulman & Moore, APC | David S. Schulman | 12220 El Camino Real, Suite 300, San Diego, CA 92130 |
| 8 | Andrew P. Johnson, APC | Andrew P. Johnson | 440 S. Melrose Drive, Suite 260, Vista, CA 92081 |

FIRST AMENDED COMPLAINT FOR DAMAGES
42 U.S.C. §§ 1983, 1985(2)
JURY TRIAL DEMANDED

ER-37

18

| No. | Corporate Defendant | Registered Agent | Agent Address |
|---|---|---|---|
| 9 | Griffith, Young & Lass | John N. Griffith | 1525 Faraday Avenue, Suite 140, Carlsbad, CA 92008 |
| 10 | San Diego Kids First, A Professional Psychology Corporation | Ben-Thomas Hamilton | 3110 Camino Del Rio South, Suite 203, San Diego, CA 92108 |

## C. IN FORMA PAUPERIS STATUS AND U.S. MARSHAL SERVICE

### 1. IFP Status

Plaintiff has been granted In Forma Pauperis status pursuant to 28 U.S.C. § 1915 in connection with the Original Complaint filed December 18, 2025. Plaintiff's IFP status remains in effect for the First Amended Complaint.

### 2. Request for U.S. Marshal Service

Pursuant to Plaintiff's IFP status, Plaintiff respectfully requests that the United States Marshal effect service of process upon all Defendants pursuant to:

**28 U.S.C. § 1915(d):** "The officers of the court shall issue and serve all process, and perform all duties in such cases."

**FRCP 4(c)(3):** "At the plaintiff's request, the court may order that service be made by a United States marshal or deputy marshal or by a person specially appointed by the court."

### 3. Documents Submitted for Service

Plaintiff has prepared and submitted the following documents for each Defendant:

| Document | Quantity | Purpose |
|---|---|---|
| Summons (AO-440) | 10 (one per Defendant) | For Clerk issuance |
| Process Receipt and Return (USM-285) | 10 (one per Defendant) | U.S. Marshal service instructions |
| First Amended Complaint with Exhibits | 10 copies | Service on each Defendant |

## D. PROCEDURAL ROADMAP — SEQUENCE OF EVENTS

Plaintiff respectfully submits the following procedural roadmap to assist the Clerk and demonstrate Plaintiff's understanding of the service process:

**STEP 1: Filing First Amended Complaint (Current)**

☑ First Amended Complaint filed with the Clerk

FIRST AMENDED COMPLAINT FOR DAMAGES
42 U.S.C. §§ 1983, 1985(2)
JURY TRIAL DEMANDED

ER-38

19

☑ Summons forms (AO-440) submitted for all 10 Defendants

☑ USM-285 forms prepared for all 10 Defendants

☑ 10 copies of First Amended Complaint prepared for service

**STEP 2: Summons Issuance (Upon Filing)**

☐ Clerk issues summons for all 10 Defendants

☐ Clerk signs and seals each AO-440 summons form

**STEP 3: U.S. Marshal Service (Upon Summons Issuance)**

*Option A — Clerk Forwards to U.S. Marshal:*

☐ Clerk forwards issued summons, USM-285 forms, and FAC copies to U.S. Marshal

☐ U.S. Marshal effects service on all Defendants

*Option B — Plaintiff Delivers to U.S. Marshal:*

☐ Plaintiff retrieves issued summons, USM-285 forms, and FAC copies from Clerk

☐ Plaintiff delivers service package to U.S. Marshal's Office (Southern District of California, 333 West Broadway, Suite 1100, San Diego, CA 92101)

☐ U.S. Marshal effects service on all Defendants

Plaintiff is prepared to proceed under either Option A or Option B at the Court's direction.

**STEP 4: Proof of Service (Upon Completion)**

☐ U.S. Marshal completes USM-285 forms documenting service

☐ U.S. Marshal returns executed USM-285 forms to Clerk

☐ Proof of service filed pursuant to FRCP 4(l)

☐ Defendants' 21-day response period begins (FRCP 12(a)(1)(A)(i))

**E. USM-285 SERVICE INSTRUCTIONS SUMMARY**

The following special instructions are included on each USM-285 form:

| Defendant | Address for Service | USM-285 Special Instructions |
|---|---|---|
| David S. Schulman, Esq. | 12220 El Camino Real, Suite 300, San Diego, CA 92130 | Personal service on individual Defendant |

FIRST AMENDED COMPLAINT FOR DAMAGES
42 U.S.C. §§ 1983, 1985(2)
JURY TRIAL DEMANDED

ER-39

20

| Defendant | Address for Service | USM-285 Special Instructions |
|---|---|---|
| Moore, Schulman & Moore, APC | 12220 El Camino Real, Suite 300, San Diego, CA 92130 | Serve David S. Schulman as registered Agent for Service of Process |
| Sara Bear, Esq. | 12220 El Camino Real, Suite 300, San Diego, CA 92130 | Personal service on individual Defendant |
| Matthew Cord, Esq. | 440 S. Melrose Drive, Suite 260, Vista, CA 92081 | Personal service on individual Defendant |
| Andrew P. Johnson, APC | 440 S. Melrose Drive, Suite 260, Vista, CA 92081 | Serve Andrew P. Johnson as registered Agent for Service of Process |
| Catie Young, Esq. | 1525 Faraday Avenue, Suite 140, Carlsbad, CA 92008 | Personal service on individual Defendant |
| Griffith, Young & Lass | 1525 Faraday Avenue, Suite 140, Carlsbad, CA 92008 | Serve John N. Griffith as registered Agent for Service of Process |
| Andrea Schuck | 3557 Monroe St., Carlsbad, CA 92008 | Personal service on individual Defendant at residence |
| Jesse Olague, Psy.D. | 12625 High Bluff Drive, Suite 204, San Diego, CA 92130 | Personal service on individual Defendant |
| San Diego Kids First | 3110 Camino Del Rio South, Suite 203, San Diego, CA 92108 | Serve Ben-Thomas Hamilton as registered Agent for Service of Process |

**Note:** San Diego Kids First's registered Agent for Service of Process (Ben-Thomas Hamilton) is located at a different address than the corporation's principal place of business. The Agent address at 3110 Camino Del Rio South, Suite 203, San Diego, CA 92108 is the correct address for service.

## F. DECLARATION

I, Robert Emert, declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. The email addresses, physical addresses, and registered agent information set forth herein are accurate to the best of my knowledge based on publicly available records from the California Secretary of State and the State Bar of California.

FIRST AMENDED COMPLAINT FOR DAMAGES
42 U.S.C. §§ 1983, 1985(2)
JURY TRIAL DEMANDED

ER-40

21

Executed at Escondido, California on 12/22/25

/s/ Robert Anthony Emert

Plaintiff, In Pro Per

2351 Vista Lago Terrace

Escondido, CA 92029

Telephone: (760) 612-9328

Email: robemert@msn.com

## EXHIBIT LIST

The following exhibits are attached hereto and incorporated by reference:

**Exhibits Attached to First Amended Complaint**

| Exhibit | Description |
|---|---|
| **Ex. B** | Defendant Schulman's statement to federal court: "Commissioner Ratekin based this recommendation on the Psychologist report" (Case No. 23-cv-0417-JLS-NLS, Doc. 22) |
| **Ex. B-1** | Register of Actions — no psychological evaluation ordered |
| **Ex. B-2** | Register of Actions — no psychologist appointed, no report filed |
| **Ex. F** (excerpt) | Transcript, February 4, 2021 (00:04:20–00:05:10) — "24-hour school… boarding school type of situation" |
| **Ex. F-1** (excerpt) | Transcript, October 4, 2021 — "FACILITY" (00:01:46) + "I'VE MUTED YOU" (00:04:30) |
| **Ex. G-2** (excerpt) | Reporter's Transcript, May 11, 2021 (RT 149–150) — "I'M CERTAINLY WITH MR. SCHULMAN" / "ME, TOO" |
| **Ex. A-1** (excerpt) | DAI Luis Peña recorded statements — key quotes re: "lined up," "pissed them off," "meat and potatoes" |

FIRST AMENDED COMPLAINT FOR DAMAGES
42 U.S.C. §§ 1983, 1985(2)
JURY TRIAL DEMANDED

22

**Exhibits Incorporated by Reference from Original Complaint (ECF Doc. 1)**

All exhibits attached to the Original Complaint filed December 18, 2025 (ECF Doc. 1) are incorporated by reference as if fully set forth herein, including but not limited to:

| Exhibit | Description |
|---|---|
| Ex. A, A-1, A-2 | DAI Luis Peña transcript and recordings (294 pages) |
| Ex. C, C-1 | Settlement Offer #1 refused (May 10, 2021) |
| Ex. D, D-1 | Settlement Offer #2 refused (October 1, 2021) |
| Ex. DD | DDA Dawn Balerio interview with B.E. — "very intelligent," "articulate," "sociable" |
| Ex. G-1 | Reporter's Transcript — Fleming testimony re: Cord's failure to contact IEP team |
| Ex. H, H-1 | Defendant Bear's characterization of STEMI as "alleged" heart attack |
| Ex. I, I-1 | Peremptory challenge filing and improper denial |
| Ex. J series | Medical records — STEMI heart attack (September 29, 2021) |
| Ex. K series | B.E.'s police report and TRO against Minor's Counsel Cord |
| Ex. L, L-1, L-2 | Default judgment while Plaintiff hospitalized |
| Ex. M series | Income imputation ($96,000/year to SNAP recipient) |
| Ex. N, N-1, N-2 | Three FCS reports unanimously recommending 50/50 custody |
| Ex. O, O-1 | IEP team documentation — no facility recommendation |
| Ex. O-2 | Treating psychologist — B.E. "doing fine" |
| Ex. P | Witness list provided to Minor's Counsel Cord (none contacted) |
| Ex. S series | Olague confidentiality violations and Fidelman declaration |
| Ex. T | Schulman's threat to San Diego Regional Center |
| Ex. W | B.E.'s return to Plaintiff at age 18 (May 2024) |
| Ex. X | Plaintiff's September 16, 2021 email to Schuck warning of harm |

FIRST AMENDED COMPLAINT FOR DAMAGES
42 U.S.C. §§ 1983, 1985(2)
JURY TRIAL DEMANDED

ER-42

23

| Exhibit | Description |
|---------|-------------|
| **Ex. Y** | Supervised visitation order based on fraud-exposing affidavit |

Plaintiff reserves the right to supplement this exhibit list through discovery and to introduce additional exhibits at any evidentiary hearing consistent with the Federal Rules of Civil Procedure and Evidence.

FIRST AMENDED COMPLAINT FOR DAMAGES
42 U.S.C. §§ 1983, 1985(2)
JURY TRIAL DEMANDED

ER-43

**EXCERPTS OF RECORD**

# ER-E

## Order Granting In Forma Pauperis

Dkt. 7, Minute Order (Feb. 3, 2026)

Emert v. Schulman et al., No. 3:25-cv-03646-JO-BJW (S.D. Cal.)

ER-44

*Pro se* Plaintiff Robert Emert sued his ex-wife, her legal team, and his children's court-appointed counsel under 42 U.S.C. §§ 1983 and 1985, asserting that they violated his rights in a 2021 state dependency proceeding by (1) failing to oppose the state court judge's hasty decision to place his son in a facility; and (2) conspiring with each other to prevent Plaintiff from presenting evidence against facility placement. *See generally* FAC. Additionally, Plaintiff alleges that Defendant Schulman violated his rights by making false representations to a federal court about the basis for the state court's dependency ruling. *Id.* par. 11 (alleging false statements made in 23-cv-0417-JLS-NLS at Dkt. 22).

To state a claim under § 1983, a plaintiff must plead both "(1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012). Section 1985 similarly "requires at least one of the wrongdoers in the alleged conspiracy to be a state actor." *Pasadena Republican Club v. W. Just. Ctr.*, 985 F.3d 1161, 1171 (9th Cir. 2021). Private parties generally do not act under color of state law, but, in limited circumstances, may be held liable as state actors if they act as "willful participant[s] in joint action with the State or its agents." *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003).

Here, Defendants--his ex-wife, her legal team, and his children's court-appointed counsel--are private individuals with no alleged nexus to state action. Plaintiff does not plead that any of these individuals acted jointly or in concert with the state judge presiding over the case or any other state actor. And acting as court-appointed counsel for minors in state dependency proceedings, without more, does not confer "state actor" status. *See Kirtley*, 326 F.3d at 1093 (court-appointed dependency counsel "do not act under color of state law for § 1983 purposes" because the "independence" of that role insulates them from § 1983 liability). Because Plaintiff has failed to show that Defendants acted under color of state law, he cannot maintain his § 1983 claim. *See id.* at 1092. Likewise, because he has not alleged that Defendants conspired with the state judge or any other state actor, he cannot maintain his § 1985 claim. *Pasadena Republican Club*, 985 F.3d at 1171 (dismissing § 1985 claim where Plaintiff "fail[ed] to allege that a state actor participated in the alleged conspiracy").

Accordingly, the Court DISMISSES Plaintiff's FAC [Dkt. 3] in its entirety because he has failed to state a claim upon which relief may be granted. Because Plaintiff cannot plead facts consistent with those already pled that would show state action by Defendants, the Court dismisses the case without leave to amend. *See Gonzalez v. Planned Parenthood*, 759, F.3d 1112, 1116 (9th Cir. 2014) ("'Futility of amendment can, by itself, justify the denial of... leave to amend.'") (quoting *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995)). The Court DENIES Plaintiff's motion for consolidated discovery [Dkt. 5] as moot. The Clerk of the Court is directed to close the case. Signed by Judge Jinsook Ohta on 2/3/2026. (iss) (Entered: 02/03/2026)

| | | |
|---|---|---|
| 02/04/2026 | 9 | CLERK'S JUDGMENT. IT IS SO ORDERED AND ADJUDGED that the Court dismisses Plaintiff's first amended complaint in its entirety because he has failed to state a claim upon which relief may be granted. Therefore, the Court dismisses the case without leave to amend and the case is hereby closed.(All non-registered users served via U.S. Mail Service)(rxc) (Entered: 02/04/2026) |
| 02/06/2026 | 10 | MOTION for Reconsideration Under Fed.R.Civ.P. 59(e) and/or - FRCP Rule 60(b)(1) by Robert Emert. (maq) (Entered: 02/06/2026) |

**PACER Service Center**

ER-45

**EXCERPTS OF RECORD**

# ER-F

**Notice of Appeal**

Dkt. 11 (Feb. 10, 2026)

Emert v. Schulman et al., No. 3:25-cv-03646-JO-BJW (S.D. Cal.)

ER-46

Rob Emert

2351 Vista Lago Terrace

Escondido, CA 92029

760-612-9328

robemert@msn.com

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

ROBERT EMERT,

    Plaintiff,

    v\.

DAVID SCHULMAN; SARA BEAR;

MATTHEW CORD; CATIE YOUNG;

ANDREA SCHUCK; JESSE OLAGUE,

    Defendants.

    Case No. 3:25-cv-03646-JO-BJW

## NOTICE OF APPEAL

## NOTICE OF APPEAL

Notice is hereby given that Plaintiff Robert Emert, proceeding pro se, appeals to the United States Court of Appeals for the Ninth Circuit from:

(1) The District Court's Order Dismissing First Amended Complaint

ER-47

Without Leave to Amend (Dkt. 8, entered February 3, 2026); and

(2) The Clerk's Judgment (Dkt. 9, entered February 4, 2026).

This appeal is timely filed pursuant to Federal Rule of Appellate Procedure 4(a)(1)(A) and 4(a)(4)(A)(iv), as Plaintiff's Motion for Reconsideration under Fed. R. Civ. P. 59(e) (Dkt. 10, filed February 6, 2026) remains pending. Should the Motion for Reconsideration be denied, this Notice shall serve as timely appeal of that denial as well.

## REQUEST FOR EXPEDITED TRANSMITTAL OF RECORD

Pursuant to Federal Rule of Appellate Procedure 11(b)(2), Plaintiff respectfully requests that the Clerk transmit the record on appeal to the Ninth Circuit on an expedited basis. The record is complete: this appeal arises from dismissal on the pleadings, no transcript is required, and all relevant docket entries are available. Expedited transmittal is warranted because: (1) a petition for writ of certiorari in a related case was filed with the Supreme Court on February 7, 2026; (2) a habeas corpus petition challenging the underlying conviction is fully briefed and awaiting ruling in this District (No. 25-cv-00820-TWR-BLM); (3) Plaintiff intends to file a Motion to Expedite under Ninth Circuit Rule 27-12 upon docketing of this appeal; and (4) the constitutional rights of Plaintiff and his minor child remain unvindicated after four years of litigation in which no court has reached the merits of these claims. Any delay in transmittal compounds the ongoing harm.

## EXECUTIVE SUMMARY

Plaintiff's First Amended Complaint ("FAC") alleges that six private defendants conspired with five named state actors---including the presiding commissioner, two supervising judges, a deputy district attorney, and a district attorney investigator---to fabricate evidence, suppress exculpatory material, and engineer the improper institutionalization of Plaintiff's minor son through coordinated fraud on the court. The 57-paragraph FAC (Dkt. 3) is supported by the original complaint's 568 paragraphs and extensive documentary exhibits incorporated by reference at FAC ¶14, together with 47 recorded

ER-48

admissions from the State's own investigator confirming the prosecution was meritless and retaliatory.

The District Court addressed none of it. The order does not mention the fabricated "psychologist report." It does not mention the suppressed exculpatory interview. It does not mention the five named state actor co-conspirators. It does not mention the 47 recorded admissions. It does not cite *Dennis v. Sparks*---the unanimous Supreme Court decision directly on point. Instead, the Court characterized these claims as dissatisfaction with a custody outcome and dismissed them in a single page.

But being unhappy about a custody ruling and alleging a documented conspiracy to fabricate the evidentiary basis for that ruling are not the same thing. The first may be outside federal jurisdiction. The second is precisely what *Miroth v. County of Trinity*, 136 F.4th 1135 (9th Cir. 2025), holds federal courts must review. To reduce allegations of evidence fabrication, witness suppression, and the improper removal of a child from his father through coordinated fraud to a "custody dispute" is not a characterization of the complaint---it is a refusal to read it.

Plaintiff asks the Ninth Circuit to do what the District Court did not: read the operative complaint, apply the controlling authority, and determine whether the FAC's conspiracy allegations---supported by 568 paragraphs of incorporated factual detail and corroborated by the State's own investigator---state a claim under *Dennis v. Sparks*, 449 U.S. 24 (1980).

## CONCISE STATEMENT OF GROUNDS FOR APPEAL

### I. THE CLAIMS THE FAC ACTUALLY ALLEGES

Plaintiff's FAC (Dkt. 3, filed December 22, 2025) asserts three causes of action: Count One (§ 1983 Procedural Due Process), Count Two (§ 1983 Fabrication of Evidence), and Count Three (§ 1985(2) Witness Tampering Conspiracy). The FAC alleges a coordinated conspiracy under 42 U.S.C. §§ 1983 and 1985(2), wherein six private Defendants---court-appointed attorneys, minor's counsel, Plaintiff's ex-wife, and a

ER-49

Case: 26-901, 02/20/2026, DktEntry: 5.1, Page 51 of 82

psychologist---acted in concert with five named state actors (Commissioner Ratekin, Judge Alksne, Supervising Judges Wood and Hoy, DDA Balerio, and DAI Peña) to:

(a) Fabricate evidence, including a "psychologist report" cited to federal court that does not exist in the state court record (FAC ¶¶ 11--12; original complaint ¶¶ 137--142, incorporated at FAC ¶14);

(b) Suppress exculpatory material, including DDA Balerio's own interview with Plaintiff's minor son stating "He's done nothing wrong. I want to be his witness for my dad" (FAC ¶4; original complaint ¶ 147, incorporated at FAC ¶14);

(c) Exploit undisclosed judicial conflicts---including Supervising Judge Hoy's status as a founding member of Defendant Schulman's law firm---to ensure no oversight of a compromised commissioner (original complaint ¶¶ 123--131, 147a, incorporated at FAC ¶14);

(d) Facilitate the improper institutionalization of Plaintiff's minor autistic son, Bryce, in violation of due process, parental rights under *Troxel v. Granville*, 530 U.S. 57 (2000), and Fourth/Fourteenth Amendment protections (FAC ¶¶ 1--4, 15--16, 44--49); and

(e) Enforce a welched plea deal through coercion, while suppressing 47 recorded admissions from the State's own investigator confirming the prosecution was meritless and retaliatory (FAC ¶¶ 37--38; original complaint ¶¶ 150a--150k, incorporated at FAC ¶14).

## II. THE DISTRICT COURT'S ERROR

The District Court dismissed the FAC on a single ground: that "Plaintiff does not plead that any of these individuals acted jointly or in concert with the state judge presiding over the case or any other state actor." Dkt. 8. That finding is factually irreconcilable with the operative complaint, which names five state actors as co-conspirators and pleads their coordinated misconduct across 57 paragraphs with exhibit support and 568 paragraphs of incorporated factual detail.

In reaching this conclusion, the Court applied *Kirtley v. Rainey*, 326

F.3d 1088 (9th Cir. 2003)---the "public function" test for state action. Plaintiff did not proceed under that theory. Plaintiff proceeded under the conspiracy/joint action test established by *Dennis v. Sparks*, 449 U.S. 24, 27--28 (1980), which holds that "private persons, jointly engaged with state officials in the challenged action, are acting 'under color' of law for purposes of § 1983." The Court's order does not cite *Dennis*. It does not distinguish *Dennis*. It does not acknowledge *Dennis* exists.

The Court further declined to address *Bretz v. Kelman*, 773 F.2d 1026 (9th Cir. 1985) (en banc)---where the Ninth Circuit reversed dismissal on nearly identical allegations of "a conspiracy among police, prosecutors and personal enemies" who "committed perjury, threatened and coerced witnesses, and concealed and falsified evidence," *id.* at 1027---as well as *Miroth v. County of Trinity*, 136 F.4th 1135 (9th Cir. 2025) (litigant fraud exception to Rooker-Feldman); *Devereaux v. Abbey*, 263 F.3d 1070 (9th Cir. 2001) (deliberate fabrication of evidence); *Smiddy v. Varney*, 665 F.2d 261 (9th Cir. 1981) (rebuttable presumption of independent judgment); and *Hardwick v. County of Orange*, 844 F.3d 1112 (9th Cir. 2017) (no immunity for fabrication in child welfare proceedings).

## III. THE COURT'S CHARACTERIZATION DOES NOT MATCH THE COMPLAINT

The Court characterized these claims as alleging that Defendants violated Plaintiff's rights by "(1) failing to oppose the state court judge's hasty decision to place his son in a facility; and (2) conspiring with each other to prevent Plaintiff from presenting evidence against facility placement." Dkt. 8.

That characterization bears no resemblance to the operative complaint. The FAC does not allege that attorneys "failed to oppose" a judge's decision. It alleges they conspired with the judge to fabricate the basis for that decision---including presenting a nonexistent "psychologist report" to federal court (FAC ¶¶ 11--12) and suppressing three FCS reports recommending 50/50 custody, the IEP team's professional consensus against institutionalization, and DDA Balerio's exculpatory interview with the child himself (FAC ¶¶ 4, 17; original complaint ¶ 147, incorporated at FAC ¶14).

ER-51

To characterize a civil rights conspiracy involving fabricated evidence, suppressed exculpatory material, undisclosed judicial conflicts, and the documented improper institutionalization of a minor autistic child as merely a custody grievance is to misapprehend the nature of the claims at a fundamental level. Dissatisfaction with a custody outcome and a documented conspiracy to fabricate the evidentiary basis for that outcome are not the same thing. The distinction matters because the former may be barred by Rooker-Feldman; the latter is expressly permitted under *Miroth*, 136 F.4th at 1141 ("misconduct by litigants in obtaining such a judgment" is reviewable in federal court).

The evidentiary record confirms the distinction. DAI Peña---the State's own investigator---made 47 recorded admissions establishing that the prosecution was meritless ("The DA's office should never have accepted your case"), retaliatory ("You pissed them off"), and that the family court attorneys coordinated against Plaintiff ("[Cord] linked up with your ex-wife's attorney [Schulman]" and "now they're trying to put something together"). FAC ¶¶ 37--38. This is not the language of a litigant unhappy with a custody ruling. This is corroboration---from the State's own officer---of the conspiracy the FAC alleges.

## IV. DENIAL OF LEAVE TO AMEND

The Court denied leave to amend on grounds of "futility." The Ninth Circuit reviews denial of leave to amend based on futility de novo. *Cohen v. ConAgra Brands, Inc.*, 16 F.4th 1283, 1287 (9th Cir. 2021). Futility is established only when "the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distributing Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). Where, as here, the deficiency identified by the Court---alleged absence of state-actor nexus---is contradicted by the complaint itself, the futility finding cannot stand.

## V. PRESERVATION OF ISSUES FOR APPELLATE REVIEW

This appeal presents the following issues for the Ninth Circuit's review:

(1) Whether the District Court erred in applying the *Kirtley* "public function" test instead of the *Dennis v. Sparks* "conspiracy/joint action" test when Plaintiff's complaint expressly alleged joint action with named state actors;

(2) Whether the District Court's factual finding that Plaintiff pled no nexus to state action constitutes clear error given the FAC's 57-paragraph complaint---supported by 568 paragraphs of incorporated factual detail---naming five state actor co-conspirators;

(3) Whether dismissal without leave to amend was an abuse of discretion where the identified deficiency does not exist in the operative complaint;

(4) Whether the District Court erred in failing to address controlling authority including *Dennis v. Sparks*, 449 U.S. 24 (1980); *Bretz v. Kelman*, 773 F.2d 1026 (9th Cir. 1985) (en banc); *Miroth v. County of Trinity*, 136 F.4th 1135 (9th Cir. 2025); *Devereaux v. Abbey*, 263 F.3d 1070 (9th Cir. 2001); *Smiddy v. Varney*, 665 F.2d 261 (9th Cir. 1981); and *Hardwick v. County of Orange*, 844 F.3d 1112 (9th Cir. 2017); and

(5) Whether the pattern of mischaracterizing claims and applying incorrect legal standards across two separate cases involving different defendants and different legal theories warrants reassignment under 28 U.S.C. § 455 or the Court's inherent authority.

The questions presented by this appeal---whether *Dennis v. Sparks* requires courts to analyze conspiracy/joint action allegations under the correct legal framework before dismissing private-party § 1983 defendants, and whether *Miroth*'s litigant fraud exception protects federal review of claims involving fabricated evidence in family court proceedings---are issues of exceptional importance that this Court's resolution will either clarify or leave for further review. Plaintiff preserves all issues raised herein for petition for writ of certiorari to the Supreme Court of the United States.

\* \* \*

Plaintiff respectfully requests that the Ninth Circuit reverse and

remand for further proceedings under the correct legal standard.

Dated: February 11, 2026

Escondido, California

/s/ Robert Emert

Robert Emert

Plaintiff, Pro Se

2351 Vista Lago Terrace

Escondido, CA 92029

(760) 612-9328

robemert@msn.com

## CERTIFICATE OF SERVICE

I hereby certify that on February 11, 2026, I electronically filed the foregoing NOTICE OF APPEAL with the Clerk of the Court for the United States District Court for the Southern District of California by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

As Defendants have not yet appeared in this action and service is being effectuated through the United States Marshal pursuant to the Court's IFP order (Dkt. 7), Plaintiff will provide copies to Defendants through the same service mechanism.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on February 11, 2026, at Escondido, California.

/s/ Robert Emert

Robert Emert

Plaintiff, Pro Se

**EXCERPTS OF RECORD**

# ER-G

## Docket Sheet (Excerpted)

As of February 10, 2026

Emert v. Schulman et al., No. 3:25-cv-03646-JO-BJW (S.D. Cal.)

ER-56

000115                                                                                                    115

Query    Reports    Utilities    Help    Log Out

CLOSED,IFP,Rule60b,USMSVC

## U.S. District Court
## Southern District of California (San Diego)
## CIVIL DOCKET FOR CASE #: 3:25-cv-03646-JO-BJW

Emert v. Schulman et al
Assigned to: Judge Jinsook Ohta
Referred to: Magistrate Judge Brian J. White
Cause: 42:1983bv Bivens Non-Prisoner

Date Filed: 12/18/2025
Date Terminated: 02/04/2026
Jury Demand: Plaintiff
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: Federal Question

**Plaintiff**

**Robert Emert**

represented by **Robert Emert**
2351 Vista Lago Terrace
Escondido, CA 92029
760-612-9328
PRO SE

V.

**Defendant**

**David S. Schulman**
*an individual*

**Defendant**

**Moore, Schulman & Moore, Apc**
*a California professional corporation*

**Defendant**

**Sara Bear**
*an individual*

**Defendant**

**Matthew Cord**
*an individual*

**Defendant**

**Andrew P. Johnson**
*a California professional corporation*

**Defendant**

**Catie Young**
*an individual*

**Defendant**

**Griffith, Young, & Lass**
*a California law firm*

ER-57

**Defendant**

**Andrea Schuck**
*an individual*

**Defendant**

**Jesse Olague, Psy.D**
*an individual*

**Defendant**

**San Diego Kids First**
*a professionsal psychology corporation*

**Defendant**

**Does 1-20**
*TERMINATED: 12/23/2025*

| Date Filed | # | Docket Text |
|---|---|---|
| 12/18/2025 | 1 | COMPLAINT with Jury Demand against All Defendants, IFP Filed, filed by Robert Emert. (Attachments: # 1 Complaint continued, # 2 Civil Cover Sheet)<br><br>The new case number is 3:25-cv-3646-JAH-BJW. Judge John A. Houston and Magistrate Judge Brian J. White are assigned to the case.(axc1). (Entered: 12/22/2025) |
| 12/18/2025 | 2 | MOTION for Leave to Proceed in forma pauperis by Robert Emert. (axc1) (Entered: 12/22/2025) |
| 12/22/2025 | 3 | AMENDED COMPLAINT with Jury Demand against Sara Bear, Matthew Cord, Griffith, Young, & Lass, Andrew P. Johnson, Moore, Schulman & Moore, Apc, Jesse Olague, Psy.D, San Diego Kids First, Andrea Schuck, David S. Schulman, Catie Young, filed by Robert Emert. (mjw) (Entered: 12/23/2025) |
| 01/09/2026 | 4 | MINUTE ORDER OF RECUSAL. Judge John A. Houston is no longer assigned. Case reassigned to Judge Jinsook Ohta for all further proceedings. The new case number is 25-cv-03646-JO-BJW.(All non-registered users served via U.S. Mail Service)(no document attached) (anh) (Entered: 01/09/2026) |
| 01/13/2026 | 5 | Plaintiff's MOTION for Limited Expedited Discovery and Consolidated Briefing Schedule by Robert Emert. (rxc) (Entered: 01/14/2026) |
| 01/30/2026 | 6 | Notice of Related Proceedings and REQUEST FOR JUDICIAL NOTICE by Robert Emert re 5 Plaintiff's Motion for Limited Expedited Discovery (Attachments: # 1 Appendix A, # 2 Appendix B, # 3 Executive Summary)(rxc) (Entered: 02/02/2026) |
| 02/03/2026 | 7 | Minute Order by Judge Jinsook Ohta: Plaintiff has filed a motion to proceed *in forma pauperis* ("IFP"). Dkt. 2. His affidavit states that he is unemployed, relies on disability income, and has less than $100 in assets. *Id.* at 1-5. Based on these facts, the Court finds that Plaintiff has sufficiently demonstrated an inability to pay filing fees. *See* 28 U.S.C. § 1915; *Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007). Accordingly, the Court GRANTS his motion to proceed IFP [Dkt. 2 ]. Signed by Judge Jinsook Ohta on 2/3/2026. (iss) (Entered: 02/03/2026) |
| 02/03/2026 | 8 | Minute Order by Judge Jinsook Ohta: Because Plaintiff is proceeding IFP, *see* Dkt. 7, the Court screens his First Amended Complaint ("FAC") [Dkt. 3] pursuant to 28 U.S.C. § 1915(e)(2)(B). |

ER-58

*Pro se* Plaintiff Robert Emert sued his ex-wife, her legal team, and his children's court-appointed counsel under 42 U.S.C. §§ 1983 and 1985, asserting that they violated his rights in a 2021 state dependency proceeding by (1) failing to oppose the state court judge's hasty decision to place his son in a facility; and (2) conspiring with each other to prevent Plaintiff from presenting evidence against facility placement. *See generally* FAC. Additionally, Plaintiff alleges that Defendant Schulman violated his rights by making false representations to a federal court about the basis for the state court's dependency ruling. *Id.* par. 11 (alleging false statements made in 23-cv-0417-JLS-NLS at Dkt. 22).

To state a claim under § 1983, a plaintiff must plead both "(1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012). Section 1985 similarly "requires at least one of the wrongdoers in the alleged conspiracy to be a state actor." *Pasadena Republican Club v. W. Just. Ctr.*, 985 F.3d 1161, 1171 (9th Cir. 2021). Private parties generally do not act under color of state law, but, in limited circumstances, may be held liable as state actors if they act as "willful participant[s] in joint action with the State or its agents." *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003).

Here, Defendants--his ex-wife, her legal team, and his children's court-appointed counsel--are private individuals with no alleged nexus to state action. Plaintiff does not plead that any of these individuals acted jointly or in concert with the state judge presiding over the case or any other state actor. And acting as court-appointed counsel for minors in state dependency proceedings, without more, does not confer "state actor" status. *See Kirtley*, 326 F.3d at 1093 (court-appointed dependency counsel "do not act under color of state law for § 1983 purposes" because the "independence" of that role insulates them from § 1983 liability). Because Plaintiff has failed to show that Defendants acted under color of state law, he cannot maintain his § 1983 claim. *See id.* at 1092. Likewise, because he has not alleged that Defendants conspired with the state judge or any other state actor, he cannot maintain his § 1985 claim. *Pasadena Republican Club*, 985 F.3d at 1171 (dismissing § 1985 claim where Plaintiff "fail[ed] to allege that a state actor participated in the alleged conspiracy").

Accordingly, the Court DISMISSES Plaintiff's FAC [Dkt. 3 ] in its entirety because he has failed to state a claim upon which relief may be granted. Because Plaintiff cannot plead facts consistent with those already pled that would show state action by Defendants, the Court dismisses the case without leave to amend. *See Gonzalez v. Planned Parenthood*, 759, F.3d 1112, 1116 (9th Cir. 2014) ("'Futility of amendment can, by itself, justify the denial of... leave to amend.'") (quoting *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995)). The Court DENIES Plaintiff's motion for consolidated discovery [Dkt. 5 ] as moot. The Clerk of the Court is directed to close the case. Signed by Judge Jinsook Ohta on 2/3/2026. (iss) (Entered: 02/03/2026)

| 02/04/2026 | 9 | CLERK'S JUDGMENT. IT IS SO ORDERED AND ADJUDGED that the Court dismisses Plaintiff's first amended complaint in its entirety because he has failed to state a claim upon which relief may be granted. Therefore, the Court dismisses the case without leave to amend and the case is hereby closed.(All non-registered users served via U.S. Mail Service)(rxc) (Entered: 02/04/2026) |
| 02/06/2026 | 10 | MOTION for Reconsideration Under Fed.R.Civ.P. 59(e) and/or - FRCP Rule 60(b)(1) by Robert Emert. (maq) (Entered: 02/06/2026) |

**PACER Service Center**

ER-59

| Transaction Receipt | | | |
|---|---|---|---|
| 02/10/2026 19:18:10 | | | |
| PACER Login: | robemert | Client Code: | |
| Description: | Docket Report | Search Criteria: | 3:25-cv-03646-JO-BJW |
| Billable Pages: | 3 | Cost: | 0.30 |

ER-60

# ER-H

# Forensic Transcript Analysis

Appendix A to Petitioner's Traverse to Respondent's Answer

Emert v. Gastelo, Case No. 25-cv-00820-TWR-BLM (S.D. Cal.)

Filed January 19, 2026

Filed in this action at Dkt. 6 (Notice of Related Proceedings,
filed January 30, 2026), Appendix B, Appendix A therein

Contains: Complete forensic analysis of audio recordings
and documentary evidence, including:

Part I: DAI Luis Peña Recording (47+ timestamped admissions)

Part II: DDA Balerio Interview with Bryce Emert (suppressed)

Part III: Defense Counsel Badillo Recordings (breach evidence)

Part IV: Andrea Schuck Recordings and Emails

Part V: FBI Transcript — The Fabricated Threat

20 pages

68
45

# EXECUTIVE SUMMARY

This Appendix presents forensic analysis of audio recordings and documentary evidence that Petitioner possesses and that the Attorney General has refused to produce for over 70 days. The evidence proves systematic constitutional violations that rendered Petitioner's guilty plea unknowing and involuntary.

## THE FIVE SMOKING GUNS

| EVIDENCE | KEY ADMISSION | CONSTITUTIONAL VIOLATION |
|---|---|---|
| 1. DAI Peña Recording (3 hours) | "Personally, I think you'll win that." "You pissed them off." "They shouldn't have accepted your case." | Brady violation - State's own investigator believed no crime occurred; prosecution was retaliatory. Never disclosed to defense. |
| 2. DDA Balerio-Bryce Interview (32 min) | Bryce: **(Timestamp 20:43):** **"I want to be his witness for my dad . He's done nothing wrong."** | Brady + Napue violation - Prosecutor heard victim exonerate defendant, then told court Bryce was "incompetent" while suppressing interview. |
| 3. Badillo "Smoking Gun" (May 1, 2023) | "The DA knows you resolved the case based on the conversation she and I had with Andrea." | Santobello violation - Defense counsel admits prosecutor KNEW custody promises induced the plea. Those promises were immediately breached. |
| 4. Andrea Schuck Recording & Emails (April-May 2023) | Promise: "Bryce is going to live with you." Breach: "We are not in negotiations." (CC: DDA Balerio) | Santobello + Due Process - Promise made to induce plea was breached with prosecutor's knowledge. DDA Balerio took no remedial action. |
| 5. FBI Transcript (Dec 2022) | "I am not making any threats. I need to make that perfectly clear." FBI: "Thank you for calling. Have a great day." | Brady + Manuel v. Joliet - Full transcript suppressed 90 days. DDA used fragment to hold Petitioner no-bail on fabricated "threat" she never charged. |

## THE ATTORNEY GENERAL'S TRILEMMA

The Attorney General cannot escape the logical implications of her refusal to produce these materials. She faces an inescapable trilemma:

| OPTION | AG'S POSITION | LEGAL CONSEQUENCE |
|---|---|---|
| 1 | She requested the prosecution file and has the recordings | DELIBERATE BRADY VIOLATION in federal court. Withholding devastating evidence that proves Petitioner's claims. |
| 2 | She requested the file but it contains no recordings | PROOF OF STATE-LEVEL BRADY VIOLATION. The DA never retained recordings proving constitutional violations - evidence destruction. |

PETITIONER'S TRAVERSE TO RESPONDENTS ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS WITH APPENDIX A

| 3 | She never requested the prosecution file | RULE 11 VIOLATION. Filed certification that lodgment was "complete" without conducting any inquiry. Bad faith. |

**There is no fourth option. The AG's silence for 70+ days on the simple question "Did you request the DA file?" is itself an admission that the answer is devastating to her position.**

# PART I: DAI LUIS PEÑA RECORDING

**Date: September 7, 2022 | Duration: Approximately 3 hours | Pages: 294 transcript pages**

**Status: WITHHELD FROM DEFENSE, COURT, AND PETITIONER'S COUNSEL**

District Attorney Investigator Luis Peña was the lead investigator assigned to Petitioner's case. In a 3-hour recorded conversation, he made 47 plus documented admissions that the prosecution lacked merit, was retaliatory, and that he was pressured to file a warrant he did not believe was supported by probable cause.

## A. THE STATE'S OWN INVESTIGATOR BELIEVED THE CASE LACKED MERIT

### Quote #1: "Personally, I Think You'll Win That"

*TIMESTAMP: [02:31:23] | PAGE: 234*

> **[02:31:23] DAI PEÑA:** *"You will get a trial. You definitely will get a trial and. Personally, I think you'll win that. I don't... I don't think that's that's a big deal."*

**FORENSIC ANALYSIS:**

This statement destroys the "rapport building" defense. No competent investigator tells a suspect "you will win at trial" if they are trying to secure a plea or confession. This creates a disincentive to cooperate. It is a candid admission that the evidence is insufficient to sustain a conviction.

**LEGAL SIGNIFICANCE:**

Under Brady v. Maryland, 373 U.S. 83 (1963), the prosecution must disclose evidence favorable to the accused. An investigator's opinion that the defendant will prevail is the most favorable evidence imaginable - the State's own agent believes there is no case.

### Quote #2: "The DA Should Never Have Accepted Your Case"

*TIMESTAMP: [02:54:47] | PAGE: 275-276*

> **[02:54:47] DAI PEÑA:** *"The DA's office should never have accepted your case because he was 14 when this all started on paper."*

**FORENSIC ANALYSIS:**

DAI Peña explicitly states the DA's office violated its own policy by accepting this case. California Penal Code § 278.7 provides an affirmative defense when a child is 14 or older. Bryce was 15. The investigator admits the case should never have existed.

PETITIONER'S TRAVERSE TO RESPONDENTS ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS WITH APPENDIX A

70
47

### Quote #3: "Why Are We Even Involved? We Don't Take Anything Over 14"

*TIMESTAMP: [00:11:05] | PAGE: 16-17*

> **[00:11:05] DAI PEÑA:** *"And and I get you about the Age, because that was my first question. Like, why are we Involved, they're like well We're too deep in it. So we can't, we can't turn around now. I'm like, why are we even involved in this case? I'm like, we don't take anything over 14."*

**FORENSIC ANALYSIS:**

Peña's FIRST QUESTION was why the DA is even involved. He was told they're "too deep in it" to back out. This reveals the case violated DA policy but continued anyway due to sunk costs and external pressure - not because a crime actually occurred.

### Quote #4: "I Think You Have Good Cause For Sure"

*TIMESTAMP: [02:38:13] | PAGE: 245-246*

> **[02:38:13] DAI PEÑA:** *"Yeah, I think you have good cause for sure... You're you're you're you're good cause and that's why I believe you need to worry it that way is like you have good cause of of of where the direction was."*

**FORENSIC ANALYSIS:**

The lead investigator explicitly validates Petitioner's affirmative defense. "Good cause" is the legal standard under PC § 278.7. The State's own agent confirmed Petitioner met it. This is the investigator admitting the complete defense was valid.

**LEGAL SIGNIFICANCE:**

Good cause negates the malice element required for conviction under PC § 278.5(a). This single admission destroys the prosecution's case as a matter of law.

### Quote #5: "This Should Be Handled in Family Court"

*TIMESTAMP: [02:21:50]*

> **[02:21:50] DAI PEÑA:** *"I believe this should be handled in Family Court and not Criminal Court."*

**FORENSIC ANALYSIS:**

An explicit admission that the matter was civil, not criminal. This directly exculpates Petitioner of criminal intent (malice), a required element of the charged offense.

### Quote #6: "How Is That Even Going To Be Proven?"

*TIMESTAMP: [02:43:17]*

> **[02:43:17] DAI PEÑA:** *"How is that even going to be proven in court as a child abduction?"*

**FORENSIC ANALYSIS:**

PETITIONER'S TRAVERSE TO RESPONDENTS ANSWER TO PETITION FOR WRIT OF
HABEAS CORPUS WITH APPENDIX A

The investigator is questioning the legal elements of the charge itself (PC 278.5). He is admitting the facts do not meet the statutory definition.

## B. EVIDENCE OF VINDICTIVE/RETALIATORY PROSECUTION

### Quote #7: "You Pissed Them Off" - THE SMOKING GUN

*TIMESTAMP: [01:12:12] | PAGE: 92-93*

PETITIONER: "What did I do to warrant losing all my parental rights?"

> **[01:12:12] DAI PEÑA:** *"You pissed them off."*

**FORENSIC ANALYSIS:**

THIS IS THE SMOKING GUN FOR VINDICTIVE PROSECUTION. When asked what justified stripping Petitioner of all parental rights and prosecuting him criminally, the State's investigator gives a one-word answer: retaliation. The prosecution occurred because Petitioner "pissed them off" by challenging family court corruption - not because he committed any crime.

**LEGAL SIGNIFICANCE:**

Under United States v. Goodwin, 457 U.S. 368 (1982), vindictive prosecution violates due process. This admission proves the prosecution was brought to punish Petitioner for exercising his First Amendment right to challenge corruption - not to punish criminal conduct.

### Quote #8: "Their Attorneys Keep Pushing Our Attorneys"

*TIMESTAMP: [02:46:27] | PAGE: 267*

> **[02:46:27] DAI PEÑA:** *"Well, because they keep pushing our attorneys, their attorneys keep pushing our attorneys and our attorneys. That's what I see when people keep pushing them. And people keep calling and harassing them. Then they file charges. It's that squeaky wheel, man. Squeaky wheels, squeaky wheel."*

**FORENSIC ANALYSIS:**

The investigator reveals the case was driven by external pressure ("pushing our attorneys") rather than evidence of a crime. The phrase "squeaky wheel" confirms charges were filed due to external pressure, not prosecutorial merit.

Quote #9:

"It's that squeaky wheel, man" [02:46:27]

### Quote #10: "We're Too Deep In It Now"

*TIMESTAMP: [00:20:10]*

> **[00:20:10] DAI PEÑA:** *"We're like too deep in it now and the attorneys are pressuring to file criminal charges."*

**FORENSIC ANALYSIS:**

PETITIONER'S TRAVERSE TO RESPONDENTS ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS WITH APPENDIX A

An admission that the decision to charge was political ("too deep in it now") rather than evidentiary. The case continued due to sunk costs, not merit.

## C. THE COERCED/PERJURED WARRANT (FRANKS VIOLATION)

### Quote #11: "Just Finish The Damn Warrant And Don't Worry About It"

*TIMESTAMP: [00:27:12] | PAGE: 42*

> **[00:27:12] DAI PEÑA:** *"But I I definitely think that now I guess to kind of put it frankly, the shits hit the fan and they they want to push this. I don't believe it's the best. [Supervisors told him:] Just finish the damn warrant and don't worry about it."*

**FORENSIC ANALYSIS:**

DAI Peña admits he was ORDERED by his supervisors to "finish the warrant" despite his professional judgment that the case lacked merit ("I don't believe it's the best"). An arrest warrant affidavit sworn by an investigator who does not believe in the probable cause is perjury.

**LEGAL SIGNIFICANCE:**

Under Franks v. Delaware, 438 U.S. 154 (1978), a warrant obtained through deliberate falsehood or reckless disregard for truth is void. Swearing to a warrant the investigator did not believe was supported by probable cause - because he was ordered to - constitutes reckless disregard.

### Quote #12: "Write A Quick Warrant And Go On The Evidence We Have"

*TIMESTAMP: [01:47:31]*

> **[01:47:31] DAI PEÑA:** *"They're like, no, just don't worry about it. Just write a quick warrant and go on the evidence we have."*

**FORENSIC ANALYSIS:**

This is the most legally damning section. Peña admits his supervisors ordered him to ignore exculpatory evidence and file the warrant anyway. This proves the subsequent affidavit was sworn with "reckless disregard for the truth," a direct violation of Franks v. Delaware. By withholding this, the Attorney General is concealing proof that the arrest warrant was perjured/coerced by supervision.

**Quote #13:** "I just don't believe we need to put an arrest warrant... because he's handling that" [01:47:54]

## D. THE INVESTIGATOR VALIDATED PETITIONER'S DEFENSE

### Quote #14: "What Do You Expect That Parent To Do?"

*TIMESTAMP: [00:20:53] | PAGE: 32*

> **[00:20:53] DAI PEÑA:** *"If someone tells anybody we're going to put your child in a facility. What do you expect that parent to do?"*

**FORENSIC ANALYSIS:**

PETITIONER'S TRAVERSE TO RESPONDENTS ANSWER TO PETITION FOR WRIT OF
HABEAS CORPUS WITH APPENDIX A

The investigator applies the "Reasonable Person" standard and concludes Petitioner's actions were reasonable. He acknowledges that ANY parent facing the threat of their child being placed in a facility would act to protect that child. This negates "malice" - a required element for conviction.

### Quote #15: "Bryce Wanted To Stay With You"

*TIMESTAMP: [02:36:45]*

> **[02:36:45] DAI PEÑA:** *"Bryce wanted to stay with you."*

**FORENSIC ANALYSIS:**

The State's investigator acknowledges the "victim's" own preference - he wanted to be with his father. This is the opposite of an abduction.

### Quote #16: "He Was Clear About Wanting To Live With His Dad"

> **[02:37:12] DAI PEÑA:** *"He was clear about wanting to live with his dad."*

**FORENSIC ANALYSIS:**

Further confirmation that Bryce's preference was known and documented by the State's investigator - yet suppressed from the defense and court.

### Quote #17: "That's No Reason To Take The Kids From You"

*TIMESTAMP: [02:37:43]*

> **[02:37:43] DAI PEÑA:** *"That's no reason to take the kids from you."*

**FORENSIC ANALYSIS:**

The investigator explicitly states there was no justification for removing custody from Petitioner.

## E. EVIDENCE OF INTENTIONAL SUPPRESSION

### Quote #18: "Didn't record it, so there it is... There's no reason to record it" [02:45:21-43]

**FORENSIC ANALYSIS:**

This is an explicit admission of intent to suppress evidence. Peña states he will hide the recording from "them" (the supervisors/prosecution team) to avoid the political fallout of his own admissions.

**LEGAL SIGNIFICANCE:**

This proves the suppression was willful and malicious, satisfying the bad faith standard of Arizona v. Youngblood. Under Kyles v. Whitley, the prosecutor is responsible for this evidence even if the investigator hid it from her.

## F. MINOR'S COUNSEL COLLUSION

### Quote #19: "They Lined Up With Your Ex-Wife"

*TIMESTAMP: [00:29:08] | PAGE: 45-46*

PETITIONER'S TRAVERSE TO RESPONDENTS ANSWER TO PETITION FOR WRIT OF
HABEAS CORPUS WITH APPENDIX A

74
51

[00:29:08] DAI PEÑA: *"I personally don't like some of them they they really. They have biases because they'll start because right now I think they lined up with with your ex-wife. I don't believe they're strictly just by themselves trying to do the best for him. I think now they line line together with your basically ex wife's attorney and now they're trying to put something together."*

**FORENSIC ANALYSIS:**

A neutral law enforcement officer independently observed that Minor's Counsel Matt Cord "lined up" with the opposing party's attorneys rather than acting in Bryce's best interests. This confirms the Miroth v. County of Trinity conspiracy theory - attorneys corrupted judicial proceedings through coordination.

## G. ADDITIONAL PEÑA ADMISSIONS

The following table summarizes additional recorded admissions by DAI Peña. Each admission independently constitutes Brady material that was suppressed from the defense:

| # | TIMESTAMP | STATEMENT | SIGNIFICANCE |
|---|---|---|---|
| 20 | 02:22:16 | "We look at good cause for many reasons, right? There's a lot of reasons why we pause on arresting people because of good cause." | Confirms standard practice is to consider good cause defense - yet they ignored it here |
| 21 | 01:20:35 | "No reason for us to even open the case." | Case should never have been opened |
| 22 | 02:30:42 | "It should have never been in criminal court." | Civil matter prosecuted criminally |
| 23 | [01:12:12] | "You pissed them off" [01:12:12] | Acknowledges retaliation trigger |
| 24 | 02:16:55 | "That's why if you go to court. That warrant's not gonna go in to the system." | Warrant was conditional on family court resolution |

PETITIONER'S TRAVERSE TO RESPONDENTS ANSWER TO PETITION FOR WRIT OF
HABEAS CORPUS WITH APPENDIX A

## PART II: DDA BALERIO INTERVIEW WITH BRYCE EMERT

**Date: February 17, 2023 | Duration: 32 minutes, 40 seconds**

**Interviewer: Deputy District Attorney Francesca Balerio | Interviewee: Bryce Emert (alleged victim, age 15-16)**

**Status: NEVER DISCLOSED TO DEFENSE COUNSEL - BRYCE SECRETLY RECORDED IT**

## A. THE FRAUD UPON THE COURT (NAPUE VIOLATION)

During state court proceedings, DDA Balerio represented to the Superior Court that Bryce Emert was "incompetent" to testify and unable to express a preference regarding custody. Based on these representations, she successfully blocked the defense from calling Bryce as a witness.

**These representations were demonstrably false. DDA Balerio possessed a recording which she tells Bryce he is "well-spoken" and "articulate," listens to him clearly express his desire to live with his father, and hears him state his father "saved" him - not abducted him.**

## B. THE ULTIMATE EXCULPATORY STATEMENT

**Quote #25: (Timestamp 20:43):**

**"I want to be his witness for my dad . He's done nothing wrong."**

> **BRYCE:** *(Timestamp 20:43):*

> (Bryce Emert Written Correspondence to Court, Counsel, and Family, 2019-2023)

**FORENSIC ANALYSIS:**

> THIS IS THE ULTIMATE EXCULPATORY STATEMENT. The "victim" explicitly exonerates the defendant, framing the alleged "abduction" as a rescue that the child requested. There can be no "malicious abduction" when the alleged victim says he asked to be taken and describes it as being saved.

**LEGAL SIGNIFICANCE:**

> Suppressing a recording where the victim says **(Timestamp 20:43):**

> **"I want to be his witness for my dad . He's done nothing wrong."**

> while prosecuting the defendant for "malicious abduction" is the most flagrant Brady violation possible. This single statement destroys the entire prosecution theory.

**Quote #26: "I Made That Choice... I Could Have Left At Any Given Point"**

*TIMESTAMP: [16:35]*

PETITIONER'S TRAVERSE TO RESPONDENTS ANSWER TO PETITION FOR WRIT OF
HABEAS CORPUS WITH APPENDIX A

76
53

> **[16:35] BRYCE:** *"The way I see it is that my dad did not violate that order... I made that choice. I made that choice to stay with him and that was to stay with him. I could have left at any given point and followed the order myself but basically he let me stay there and that's what all parents should do."*

**FORENSIC ANALYSIS:**

Bryce explicitly states he made an AUTONOMOUS CHOICE to stay with his father and could have left at any time. He frames his father's conduct as exemplary parenting ("what all parents should do"), not criminal conduct. This directly contradicts any "abduction" narrative and triggers the PC § 278.7 defense.

## Quote #27: "Everything Has Just Been Great"

*TIMESTAMP: [00:56]*

> **[00:56] BRYCE:** *"You know, ever since I've been... taken out of this equation I've had the opportunity to stay with my dad and basically teach me what I need to know and everything. Everything has just been great, you know? ... Me having a choice... was great."*

**FORENSIC ANALYSIS:**

The alleged victim describes the period of "abduction" as "great." This is not the statement of a kidnapping victim - it is the statement of a child who wanted to be with his father and thrived there.

## Quote #28: "Ever Since My Dad Has Been Out of My Life I've Been Suffering"

*TIMESTAMP: [00:03]*

> **[00:03] BRYCE:** *"There are a number of reasons ever since my dad has been out of my life I've been suffering. I just tell people, adults, because you're the best chance I have basically, you know, being a voice for me to basically saying what my needs are... I really, you know everything is just going sideways since my dad's without my life, I need him."*

**FORENSIC ANALYSIS:**

Bryce pleaded with DDA Balerio, telling her he has been SUFFERING without his father. He explicitly asked her to be his "voice" and said "I need him." DDA Balerio heard this plea. She suppressed it. She prosecuted anyway.

PETITIONER'S TRAVERSE TO RESPONDENTS ANSWER TO PETITION FOR WRIT OF
HABEAS CORPUS WITH APPENDIX A

77
54

## C. DDA BALERIO ACKNOWLEDGES BRYCE'S COMPETENCE

### Quote #29: "You Are Very Well-Spoken" / "Articulate"

*TIMESTAMP: [21:26 and throughout]*

> **[21:26] DDA BALERIO:** *"You are very well-spoken."*

> **[21:26] DDA BALERIO:** *"You are articulate."*

**FORENSIC ANALYSIS:**

The prosecutor explicitly acknowledges Bryce's intelligence and ability to communicate clearly. She then argued to the court that this same child was "incompetent" to testify. This is a textbook Napue v. Illinois violation - knowingly presenting false statements to the court.

## D. DDA BALERIO'S BROKEN PROMISES TO A CHILD

### Quote #30: "I Will Get Their Voice Heard"

> **[N/A] DDA BALERIO:** *"I can tell you that from the bottom of my heart, my favorite thing in my case is getting to allow people that don't get their voice heard they don't worry because I will get their voice heard."*

**WHAT SHE PROMISED: To ensure Bryce's voice would be heard.**

**WHAT SHE DID: Suppressed the interview. Blocked Bryce from testifying. Argued he was "incompetent."**

### Quote #31: "I'm Happy To Have You As A Witness"

> **[N/A] DDA BALERIO:** *"I'm more than happy to let defense know that you certainly want to be a witness for your dad and I'm happy to have you as a witness as well."*

**WHAT SHE PROMISED: To inform defense that Bryce wanted to testify for his father.**

**WHAT SHE DID: Never told defense counsel. Argued to EXCLUDE Bryce from testifying. Obtained conviction without a jury ever hearing from the "victim."**

PETITIONER'S TRAVERSE TO RESPONDENTS ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS WITH APPENDIX A

## PART III: DEFENSE COUNSEL BADILLO RECORDINGS

**Dates: April 13 - May 3, 2023 (multiple recordings)**

**Topic: Post-plea discussions about breached custody promises**

Under Santobello v. New York, 404 U.S. 257, 262 (1971), "when a plea rests in any significant degree on a promise or agreement of the prosecutor... such promise must be fulfilled." The following recordings prove: (1) the plea was induced by custody promises known to DDA Balerio; (2) DDA Balerio was aware the plea was "based on" these promises; (3) the promises were breached immediately; and (4) DDA Balerio witnessed the breach and took no remedial action.

## A. THE SMOKING GUN

### Quote #32: "The DA Knows You Resolved The Case Based On..."

*DATE: May 1, 2023 | TIMESTAMP: [00:16:58]*

SPEAKER: Jose Badillo (Defense Counsel)

> **[00:16:58] BADILLO:** *"The DA knows... that you resolved the case based on the conversation she and I had with Andrea [Schuck]."*

**FORENSIC ANALYSIS:**

THIS IS THE SMOKING GUN. Defense counsel explicitly confirms that DDA Balerio ("the DA") was not only aware of the custody promise but that she KNEW it was the basis for the plea ("resolved the case based on"). This single sentence proves FOUR critical facts:

**1. Pre-plea timing: Badillo had a conversation with Andrea about custody BEFORE the plea**

**2. Prosecutor participation: DDA Balerio was part of this conversation and agreement**

**3. Inducement: The custody promises were THE REASON Petitioner "resolved the case" - i.e., pled guilty**

**4. Prosecutor knowledge of inducement: DDA Balerio KNEW Petitioner was pleading guilty BECAUSE OF the custody promises**

### Quote #33: "She Would Be Willing To Talk To Andrea Again"

*DATE: May 3, 2023 | TIMESTAMP: [00:02:06]*

> **[00:02:06] BADILLO:** *"[DDA Balerio] would be willing to, you know, talk to Andrea again to make sure that she's on the same page and not backing out based on the conversation that we have with her."*

PETITIONER'S TRAVERSE TO RESPONDENTS ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS WITH APPENDIX A

**FORENSIC ANALYSIS:**

This confirms DDA Balerio's active role in the custody arrangement. A prosecutor does not offer to mediate a private custody dispute unless that dispute is a material term of the plea agreement. The phrase "on the same page" proves there was an agreement Andrea needed to honor.

**Quote #34: "Her Backpedaling... Could Be An Issue That Can Be Raised"**

*DATE: May 1, 2023 | TIMESTAMP: [00:17:08]*

> [00:17:08] **BADILLO:** *"Her backpedaling on that... could be an issue that can be raised."*

**FORENSIC ANALYSIS:**

Defense counsel acknowledges Andrea's "backpedaling" could be grounds for plea withdrawal. An attorney does not tell his client that the opposing party's backpedaling "could be an issue" unless there was an agreement to backpedal FROM.

## B. PROOF OF BRADY SUPPRESSION

**Quote #35: "Did She Ever Tell You About Her Conversation With Bryce?"**

*DATE: April 13, 2023 | TIMESTAMP: [00:07:51]*

ROB EMERT: "Did she ever tell you about her conversation with Bryce?"

> [00:07:51] **BADILLO:** *"NO."*

> [00:07:51] **BADILLO:** *"See, there's something weird there because that's huge right there. That she didn't disclose that..."*

**FORENSIC ANALYSIS:**

This proves DDA Balerio committed a Brady violation not just against the defendant, but against defense counsel. Badillo admits he was unaware of the interview where Bryce exonerated his father. A plea cannot be "knowing and voluntary" when the prosecution has suppressed material exculpatory evidence (the victim's recantation). Badillo's reaction ("that's huge") confirms that this evidence would have materially altered the defense strategy.

PETITIONER'S TRAVERSE TO RESPONDENTS ANSWER TO PETITION FOR WRIT OF
HABEAS CORPUS WITH APPENDIX A

80
57

# PART IV: ANDREA SCHUCK RECORDINGS AND EMAILS

**Source: Recorded calls between Petitioner and Andrea Schuck, April 11-13, 2023**

**Email Evidence: April-May 2023 correspondence (CC: DDA Balerio)**

These recordings prove: (1) the plea was induced by custody promises (Santobello violation); (2) Bryce was threatened with juvenile detention for wanting to live with his father (coercion); and (3) Andrea consciously deprioritized Bryce's needs while the State prosecuted the father trying to help him.

## A. THE "JUVI" THREATS - COERCING A CHILD

### Quote #36: "If He Runs Away, He's Going To Juvi"

*TIMESTAMP: [00:31:42]*

> **[00:31:42] ANDREA SCHUCK:** *"But you know, at the moment, if he runs away, he's going to juvi."*

**FORENSIC ANALYSIS:**

Andrea explicitly states that if Bryce tries to go home to his father, the consequence is juvenile detention - not family reunification, not counseling, but incarceration of a minor.

### Quote #37: "So If He Wants To Stay With Me—" "He Goes To Juvi."

*TIMESTAMP: [00:33:45-00:33:47]*

ROB EMERT: "So if he wants to stay with me—"

> **[00:33:47] ANDREA SCHUCK:** *"He goes to juvi."*

**FORENSIC ANALYSIS:**

The exchange is unambiguous. If Bryce wants to live with his father, he goes to juvenile detention. This explains why Bryce remained with Andrea despite telling DDA Balerio he was "suffering" and needed his father.

## B. "SKYLAR FIRST" - CONSCIOUS DEPRIORITIZATION

### Quote #38: "I'm Going To Put Skylar First"

*TIMESTAMP: [00:37:15-00:37:30]*

> **[00:37:15] ANDREA SCHUCK:** *"No, but I'm going to put Skylar first, because right now Skyler's been last in this family and she deserves you first... She needs and right now she doesn't need Bryce. So that's why I'm willing to play ball with you."*

**FORENSIC ANALYSIS:**

PETITIONER'S TRAVERSE TO RESPONDENTS ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS WITH APPENDIX A

Andrea explicitly states she is deprioritizing Bryce's needs in favor of Skylar. She says she "doesn't need Bryce." Meanwhile, DDA Balerio possessed Bryce's recorded statement: "Ever since my dad has been out of my life I've been suffering... I need him." The prosecution knew Bryce was suffering and knew his mother was consciously putting his needs last.

## C. THE BAIT-AND-SWITCH

### Quote #39: "I Offered You The Moon"

*TIMESTAMP: [00:52:41]*

> **[00:52:41] ANDREA SCHUCK:** *"I offered you, I offered you the moon."*

**FORENSIC ANALYSIS:**

Andrea admits she "offered the moon" (custody) to get Petitioner to plead guilty. After the plea was entered, she retracted.

### Quote #40: "I Will Not Send An Offer... Until You Drop Your Other Cases"

*EMAIL*

> **EMAIL - ANDREA SCHUCK:** *"I will not send an offer... until you drop your other cases."*

**FORENSIC ANALYSIS:**

This is the breach. After the plea was entered, Schuck (and by extension the State) added a new condition: "Drop your civil lawsuits." This condition was never part of the plea agreement. It is extortionate and renders the plea void.

## D. EMAIL EVIDENCE OF BREACH (CC: DDA BALERIO)

### May 18, 2023 Email (CC: DDA Francesca Balerio):

> **[Email] ANDREA SCHUCK:** *"We are not in negotiations."*

**FORENSIC ANALYSIS:**

The prosecutor was copied on this breach. She witnessed the plea inducement being withdrawn. She took no remedial action. Under Santobello, this breach alone invalidates the plea.

PETITIONER'S TRAVERSE TO RESPONDENTS ANSWER TO PETITION FOR WRIT OF
HABEAS CORPUS WITH APPENDIX A

# PART V: THE FBI TRANSCRIPT - THE FABRICATED THREAT

**Date: December 2022 (11-minute call) | Followed by: 2.5-3 hour face-to-face FBI assessment**

**Status: FULL TRANSCRIPT SUPPRESSED FOR 90 DAYS - ONLY "BLURB" PROVIDED**

DDA Balerio held Petitioner 90 DAYS WITHOUT BAIL based on a claimed "threat to the FBI." The full transcript - suppressed until after the plea - proves this was a fabrication. Petitioner denied making any threats at least THREE times during the call, and the FBI operator ended the call by wishing him a "great day."

## A. THE EXCHANGE THAT DESTROYS THE "THREAT" ALLEGATION

### Quote #41: FBI Operator's Direct Question - Petitioner's Explicit Denial

*TIMESTAMP: [00:06:27 - 00:06:37]*

> **[00:06:27] FBI OPERATOR:** *"You don't have any intentions of hurting anybody, correct?"*
>
> **[00:06:33-37] PETITIONER:** *"Well, like I said, I am not making any threats. I need to make that perfectly clear. I've not made any threats whatsoever. I'm not a violent person, but I know my Second Amendment right."*
>
> **[End of call] FBI OPERATOR:** *"OK, so I will document all this information here on my end, Sir. OK. Thank you for calling the FBI. I hope you have a great day today."*

**FORENSIC ANALYSIS:**

A trained FBI operator directly asked about violent intent. Petitioner gave an explicit, unambiguous denial: "I need to make that perfectly clear. I've not made any threats whatsoever." The operator showed no alarm and wished him a great day.

Yet DDA Balerio extracted fragments out of context—a reference to "Second Amendment" rights—and used them to hold Petitioner 90 days without bail.

**Consider what DDA Balerio actually did:**

She sat on this case for over a year while her own investigator said it lacked merit. She then fabricated a "threat" from an FBI call that the FBI itself cleared as non-threatening. She used that fabricated threat to cage a citizen with zero criminal history and zero flight risk for 90 days. She withheld the full FBI transcript that would have exposed her lie. She withheld the FBI's in-person threat assessment—conducted at the FBI field office—that cleared Petitioner entirely. She never charged PC § 422 (criminal threats)—because she knew the charge would never survive scrutiny.

PETITIONER'S TRAVERSE TO RESPONDENTS ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS WITH APPENDIX A

**The "threat" was never a threat. It was a tool.**

A tool to detain. A tool to break. A tool to coerce a guilty plea to a case her own investigator said should never have been filed.

**What kind of prosecutor fabricates a threat, suppresses the evidence disproving it, and cages an innocent man for 90 days to extract a plea?**

The kind now hiding behind the Attorney General's refusal to produce the evidence.

### Quote #42: First Denial [00:04:16]

> [00:04:16] PETITIONER: *"I, you know, I'm not a violent person and I'm not making any threats whatsoever, but I know my federal rights."*

### Quote #43: Third Denial [00:07:58]

> [00:07:58] PETITIONER: *"So they put the pause button on this thing because if they send somebody out again, I am not making any threats."*

### Quote #44: The Purpose of the Call [00:07:52]

> [00:07:52] PETITIONER: *"I'm calling to ask the FBI to put the pause button on this thing... so somebody doesn't get hurt."*

**FORENSIC ANALYSIS:**

> Petitioner called the FBI to de-escalate and seek legal intervention. The Prosecution used out-of-context snippets from this call to claim Petitioner was a "danger," securing a "no bail" hold.

## B. THE FBI FACE-TO-FACE ASSESSMENT

Following the call, the FBI conducted a 2.5-3 hour face-to-face assessment with Petitioner. The agent's conclusion: "You're not a threat, dude." This assessment was provided to DDA Balerio. She suppressed it.

## C. DDA BALERIO NEVER CHARGED PC § 422 - PROOF SHE KNEW

**The most damning proof that DDA Balerio knew the "threat" was fabricated: she NEVER FILED PC § 422 (criminal threats) charges. If she genuinely believed Petitioner made criminal threats to the FBI, she would have charged it. She didn't - because she knew it would never survive scrutiny. Instead, she used the fabricated "threat" solely as pretextual leverage to deny bail and coerce a guilty plea.**

PETITIONER'S TRAVERSE TO RESPONDENTS ANSWER TO PETITION FOR WRIT OF
HABEAS CORPUS WITH APPENDIX A

84
61

# THE INTERCONNECTED PATTERN OF SUPPRESSION

The six categories of evidence are not isolated incidents. They form a coordinated pattern of constitutional violations designed to secure a conviction the State knew was unjust.

| EVIDENCE | WHAT IT PROVES | WHY IT WAS SUPPRESSED |
|---|---|---|
| **DAI Peña Recording** | State's investigator believed no crime occurred, prosecution was retaliatory, warrant was coerced | Would have given Petitioner confidence to proceed to trial instead of accepting coerced plea |
| **DDA Balerio-Bryce Interview** | "Victim" told prosecutor his father "saved" him and he wanted to live with him | Would have destroyed prosecution theory and proven "good cause" defense |
| **PC § 278.7 Defense Correspondence** | From October 2021 through December 2022—over fourteen months—Petitioner sent extensive email correspondence directly to the DA's office documenting his complete statutory defense: medical records showing Bryce's emotional abuse, evidence of facility placement threats, and legal analysis of his rights under PC § 278.7. **The DA possessed Petitioner's complete defense before they ever filed charges.** | Would have proven "good cause" defense—which their own investigator later validated: **"I think you have good cause for sure"** [02:38:13] |
| **Badillo Recordings** | Prosecutor knew plea was induced by custody promises that were immediately breached | Would have required enforcing promises or vacating plea |
| **Andrea Schuck Evidence** | Promise made, promise breached, prosecutor witnessed breach | Documents the *Santobello* violation in writing |
| **FBI Transcript** | No threat was made; FBI cleared Petitioner | Would have destroyed pretextual basis for 90-day no-bail detention that produced coerced plea |

**The Pattern:** At every stage—investigation, prosecution, plea—the State possessed evidence that would have prevented the conviction. At every stage, that evidence was suppressed. This is not accident or oversight. **It is deliberate constitutional misconduct.**

**The most damning proof of intent:** The DA received fourteen months of detailed correspondence proving Petitioner's PC § 278.7 defense. Their own investigator reviewed the file and confirmed: "I think you have good cause for sure." They suppressed the investigator's admission. They never disclosed the correspondence to defense counsel. They prosecuted

PETITIONER'S TRAVERSE TO RESPONDENTS ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS WITH APPENDIX A

anyway—a case they knew was meritless, against a defendant they knew had a complete statutory defense, validated by their own investigator.

**This was not a prosecution seeking justice. It was a persecution seeking silence.**

## THE ULTIMATE VINDICATION

On Bryce's 18th birthday - March 14, 2024 - the moment of legal autonomy when he could finally make his own choice - he moved back home with Petitioner. Under Andrea's custody, he had no diploma, no license, and "almost no outlets to the world." Within months of returning to his father, he obtained his diploma, his permit, and enrolled in college.

**The alleged "victim" chose to live with the alleged "abductor." That is the ultimate vindication - and the final proof that every participant in this prosecution knew they were prosecuting an innocent man.**

PETITIONER'S TRAVERSE TO RESPONDENTS ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS WITH APPENDIX A

## RELIEF REQUESTED

Based on the foregoing forensic analysis, Petitioner respectfully requests that this Court:

**1. GRANT the Petition for Writ of Habeas Corpus**

**2. VACATE the judgment of conviction entered on April 3, 2023, in San Diego Superior Court Case No. SCD290570**

**3. ORDER Petitioner's immediate release from all terms of probation, parole, or supervised release**

**4. ORDER Respondent to produce, within 14 days, a sworn declaration under penalty of perjury stating:**

   a. Whether she requested the prosecution file from the San Diego DA

   b. If so, when and what materials were received

   c. Whether any audio recordings were included

   d. For each category of Brady material: EXISTS / DOES NOT EXIST / CANNOT BE LOCATED

**5. DRAW ADVERSE INFERENCES if the Attorney General fails to produce the materials Petitioner has demonstrated he possesses**

**6. DEEM the Schlup actual innocence gateway satisfied based on the evidence presented herein**

**7. ORDER an evidentiary hearing on the Brady violations, coerced plea, and prosecutorial misconduct**

**8. IMPOSE SANCTIONS on the Attorney General for violation of Rule 11 and the duty of candor to the tribunal**

**9. GRANT such other and further relief as the Court deems just and proper**

## CONCLUSION

The evidence presented in this Appendix is not speculative. It is not alleged. Petitioner possesses it. The question is why the Attorney General refuses to produce the State's copies for over 70 days while claiming the lodgment is "complete."

PETITIONER'S TRAVERSE TO RESPONDENTS ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS WITH APPENDIX A

The answer is obvious: these recordings are devastating. They prove the State's own investigator believed no crime occurred. They prove the prosecutor heard the "victim" exonerate his father and suppressed it. They prove the plea was induced by promises the prosecutor knew would be broken. They prove the 90-day no-bail detention was based on a fabricated "threat" the prosecutor never charged because she knew it was false.

Her silence is not neutral. It is a confession.

---

**END OF APPENDIX A**

*This Appendix is an integral component of Petitioner's Traverse*

---

Dated: January 20, 2026

Respectfully submitted,

/s/ Robert Emert
ROBERT EMERT
Petitioner, Pro Se

PETITIONER'S TRAVERSE TO RESPONDENTS ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS WITH APPENDIX A