No. 26-901

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ROBERT EMERT,
*Plaintiff-Appellant,*

v.

DAVID SCHULMAN, et al.,
*Defendants-Appellees.*

On Appeal from the United States District Court
for the Southern District of California
No. 3:25-cv-03646-JO-BJW
Hon. Jinsook Ohta, District Judge

**SUPPLEMENTAL BRIEF OF APPELLANT**

## INTRODUCTION

On April 9, 2026, the district court denied Appellant's Rule 59(e) Motion for Reconsideration. Exhibit A. The order was entered after Appellant's Opening Brief was filed in this Court. Under FRAP 4(a)(4)(B)(i), the Notice of Appeal is now effective.

The Rule 59(e) motion did everything the appellate rules contemplate. It identified *Dennis v. Sparks*, 449 U.S. 24 (1980), by name. It quoted the holding. It walked the court through the FAC's paragraph-by-paragraph allegations of conspiracy with named state actors. It explained the distinction between the public-function test the

court applied and the conspiracy/joint-action test the complaint invoked. Dkt. 10 at 2–6.

The court's response was to restate its original conclusion—without citing *Dennis*, without addressing the distinction between the two state-action tests, and without engaging with any of the six controlling authorities Appellant identified. The result is that this appeal now presents the Ninth Circuit with *two* orders dismissing claims of conspiracy with judicial officers, neither of which cites the Supreme Court decision that has governed conspiracy with judicial officers for forty-six years.

## ARGUMENT

### I. *Dennis* Remains Unaddressed After Two Orders and One Express Invocation.

The February 3 dismissal order did not cite *Dennis*. Opening Brief §§ A, C. The Rule 59(e) motion then placed *Dennis* squarely before the court—identifying it by name, quoting its holding that private parties "jointly engaged with state officials in the challenged action" act under color of law, and demonstrating the identical procedural posture. Dkt. 10 at 3–4.

The April 9 order addresses Appellant's joint-action arguments at length. It discusses Commissioner Ratekin. It discusses DAI Peña. It restates its conclusion that Appellant failed to plead joint action. But it does not cite *Dennis*. It does not

distinguish *Dennis*. It does not acknowledge that *Dennis* exists—even after Appellant hand-delivered the citation.

A district court may disagree with a plaintiff's reading of Supreme Court precedent. What it may not do is refuse to read it at all.

**II. The Order Inverts the *Dennis* Inquiry by Analyzing the Judge's Conduct Rather Than the Defendants'.**

The April 9 order states that Appellant's "only allegations concerning Commissioner Ratekin are that (1) she decided to place Plaintiff's son in a facility without reviewing any evidence" and "(2) she denied Plaintiff's valid preemptory challenge," concluding that "neither of which show that she acted jointly with Defendants." Exhibit A.

Consider what the court's own summary concedes. A judicial officer ordered a child institutionalized without reviewing *any* evidence—within five minutes of taking the bench. FAC ¶¶15–17. She then denied the father's statutory right to remove her from the case, ensuring she would preside over proceedings in which she had already announced the outcome. FAC ¶¶20–21. At the 12(b)(6) stage, where all reasonable inferences are drawn in the plaintiff's favor, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), these facts do not suggest a judge exercising independent judgment. They describe a proceeding whose outcome was fixed before it began— precisely the environment in which a conspiracy between private parties and a

judicial officer becomes plausible. The district court recited these facts and drew no inference from them.

But even setting aside the alarming nature of the conduct the court itself described, the legal error is independent. This analysis asks the wrong question. *Dennis* does not require the plaintiff to show that the *judge* acted jointly with the private parties. It requires the plaintiff to show that the *private parties* were "willful participant[s] in joint action with the State." 449 U.S. at 27. The question is not what Ratekin did independently. The question is what the Defendants did *with* Ratekin: fabricating the evidentiary basis she relied on (FAC ¶¶11–12), suppressing contrary evidence she never saw (FAC ¶¶4, 17), coordinating to block witnesses who would have contradicted the predetermined outcome (FAC ¶¶22, 27, 30–32), and exploiting the jurisdictional void created by her improper denial of Appellant's peremptory challenge (FAC ¶¶20–21). The Defendants did not merely appear before a judge. They *weaponized* her.

## III. The Order Evaluates a Witness as Though He Were a Defendant.

The April 9 order states: "Plaintiff's only allegation against Investigator Pena is that he was 'neutral' and had 'no stake' in the state court proceedings, . . . which also does not show joint action with the private defendants." Exhibit A.

Appellant has never alleged that Peña engaged in joint action with the private defendants. Peña is not a defendant in this case. He is not alleged to be a co-

conspirator. He is a *witness*—a neutral law enforcement officer whose 47 recorded admissions *corroborate* the private defendants' conspiracy with Ratekin. FAC ¶¶37–38. His statements that family court attorneys "linked up" against Appellant, that "the DA's office should never have accepted your case," and that Appellant "pissed them off" are *evidence* of conspiracy—not allegations *against* Peña.

The district court treated Appellant's most powerful corroborating witness as a putative defendant, evaluated whether the witness conspired with the other defendants, concluded he did not, and then discarded his testimony. That is not a permissible reading of the complaint at any stage of proceedings—let alone at the 12(b)(6) stage, where all reasonable inferences are drawn in the plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## IV. The Pattern Is Now Documented Across Two Orders.

Opening Brief § G requested reassignment on remand based on a cross-case pattern of applying incorrect legal tests to mischaracterized claims. The April 9 order extends that pattern within *this* case. The district court was presented with the precise legal authorities, the precise FAC citations, and the precise distinction between the public-function and conspiracy/joint-action tests. It produced a second order that does not cite the governing authority, misidentifies the corroborating witness as a putative defendant, and analyzes the judge's conduct rather than the defendants'.

The question posed in Opening Brief § G has now answered itself: *When the same district court applies the wrong legal test to the wrong legal theory in multiple orders after express briefing on the correct test, the pattern is the problem.*

**THE HUMAN STAKES OF THE LEGAL ERROR**

This Court will evaluate the April 9 order on de novo review, and the legal errors speak for themselves. But the panel should understand what those errors protected. The facts summarized here are not new—they are documented in the Opening Brief (Statement of the Case) and the Excerpts of Record (ER-D, FAC ¶¶1–41).

The child at the center of this case is autistic. Three Family Court Services reports recommended 50/50 custody. A nine-person IEP team unanimously opposed institutionalization. No professional evaluator—not one—ever recommended facility placement. FAC ¶¶17. Yet within five minutes of taking the bench, Commissioner Ratekin announced "24-hour facility" placement. FAC ¶¶15–16. Defendant Schulman then cited a "psychologist report" to federal court that does not exist in the state court record. FAC ¶¶11–12. When Appellant offered every Defendant a comprehensive settlement asking only for written confirmation that his son would not be institutionalized, every Defendant refused. FAC ¶¶30–32. When the child himself filed a police report and sought a restraining order against his own court-appointed attorney, the proceedings continued without pause. FAC ¶¶26.

The results of the conspiracy speak for themselves. For nearly three years, B.E. was separated from the parent who had been his primary caregiver his entire life. During that separation, he dropped out of high school, did not obtain his driver's license at sixteen as planned, and had no path to college. The Defendants' intervention did not protect him. It destroyed his trajectory.

When B.E. turned eighteen, he returned to live with Appellant immediately. FAC ¶¶40–41. Within six months, he obtained his high school diploma, earned his driver's permit, and enrolled in college. Every milestone the conspiracy stole from him, he recovered—the moment the conspiracy's product expired. The "danger" that justified institutionalizing him was fiction.

The Defendants in this case did not merely fail to prevent this outcome. They engineered it. They fabricated the evidentiary basis for it, suppressed the evidence against it, coordinated to block every attempt to challenge it, and refused the settlement that would have ended it—because ending it was never the objective. *That* is why they are defendants in federal court. And the legal errors in the orders below are the mechanism by which accountability for what they did to this child continues to be avoided.

## CONCLUSION

The April 9, 2026 order confirms that the errors identified in the Opening Brief were not inadvertent. They were repeated after explicit briefing. Every section of the

Opening Brief—from the wrong state-action test (§ A), to the factual misreading (§ B), to the six unaddressed authorities (§ C), to the mischaracterization of claims (§ D), to the unrebutted presumption of independent judgment (§ E)—is reinforced by a district court that was given a second chance to engage with the law and the facts, and did not.

This Court has already spoken to the core misconduct alleged here. In *Hardwick v. County of Orange*, 844 F.3d 1112 (9th Cir. 2017), this Court held that social workers who fabricated evidence and made misrepresentations to a California dependency court to remove children from their mother were not entitled to qualified immunity. Judge Trott wrote for the panel: "No official with an IQ greater than room temperature in Alaska could claim that he or she did not know that the conduct at the center of this case violated both state and federal law." *Id.* at 1117–18. The Court continued: "[T]here is no such thing as a minor amount of actionable perjury or of false evidence that is somehow permissible." *Id.* at 1118.

*Hardwick* involved fabrication of evidence in California dependency proceedings to sever a child's relationship with her mother. This case involves fabrication of evidence in California dependency proceedings to institutionalize a child against his father's wishes. The Defendants did not need a court order to know that fabricating a nonexistent "psychologist report," suppressing a child's exculpatory statements to a prosecutor, coordinating silence to block a father's evidence, and refusing the one

settlement condition that would have kept a child out of an institution were wrong. As this Court said in *Hardwick*: "We cannot conceive of circumstances in which [officials] would not know and understand that they could not use criminal behavior in any court setting to interfere with a person's fundamental constitutional liberty interest." *Id.* at 1119. Neither can Appellant.

Appellant respectfully requests that this Court consider the attached April 9, 2026 order in conjunction with the Opening Brief filed in this matter.

Dated: 04/14/26
Escondido, California

Respectfully submitted,

/s/ Robert Emert
**ROBERT EMERT**
Plaintiff-Appellant, Pro Se
2351 Vista Lago Terrace
Escondido, CA 92029
(760) 612-9328 – robemert@msn.com

**EXHIBIT A**

**DISTRICT COURT MINUTE ORDER**
**DENYING RULE 59(e) MOTION FOR RECONSIDERATION**

Dkt. 14, entered April 9, 2026

*Emert v. Schulman et al.,*
No. 3:25-cv-03646-JO-BJW (S.D. Cal.)

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.

***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

U.S. District Court

Southern District of California

Notice of Electronic Filing

The following transaction was entered on 4/9/2026 at 12:23 PM PDT and filed on 4/9/2026

**Case Name:** Emert v. Schulman et al

**Case Number:** 3:25-cv-03646-JO-BJW

**Filer:**

**WARNING: CASE CLOSED on 02/04/2026**

**Document Number:** 14(No document attached)

**Docket Text:**

Minute Order by Judge Jinsook Ohta: Plaintiff filed a motion for reconsideration under Fed. R. Civ. P. 59(e) or 60(b) of the Court's order dismissing his First Amended Complaint with prejudice. Dkt. 10. Reconsideration is "an extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (internal quotation marks omitted). The Ninth Circuit has identified three grounds for reconsideration: (1) newly discovered evidence; (2) an intervening change in controlling law; or (3) to correct clear error in the prior decision or a result of manifest injustice. *Mustafa v. Clark Cnty. Sch. Dist.*, 157 F.3d 1169, 1179 (9th Cir. 1998).

Plaintiff has not identified any newly discovered evidence, intervening change in the law, or manifest injustice that would result if the Court does not reconsider its decision. Instead, he argues that the Court committed clear error by (1) concluding that he had not alleged joint action with state actors; (2) failing to apply the "joint action" test when deciding whether the private defendants engaged in state action under 42 U.S.C. § 1983; and (3) dismissing without leave to amend. Dkt. 10 at 2.

The Court did not commit clear error in concluding that Plaintiff had not alleged joint action with a state actor. As stated in the Court's February 3, 2026 order, Plaintiff's pleading contains no factual allegations that the private defendants in this case--his ex-wife, her legal team, and his children's court-appointed counsel--acted jointly with Commissioner Patti Ratekin and/or District Attorney Investigator Luis Pena, the only state actors identified in the First Amended Complaint. *See generally* Dkt. 3 ("FAC"). Plaintiff's only allegations concerning Commissioner Ratekin are that (1) she decided to place Plaintiff's son in a facility without reviewing any evidence, *id.* ¶¶ 15-17, 27; and (2) she denied Plaintiff's valid preemptory challenge based on the parties' prior verbal stipulation, *id.* ¶¶ 20-21, neither of which show that she acted jointly with Defendants. Plaintiff's only allegation against Investigator Pena is that he was "neutral" and had "no stake" in the state court proceedings, *id.* ¶¶ 37-38, which also does not show joint action with the private defendants.